180 S.W.3d 577 (2005)
Marshall COLEMAN, et al., Appellants,
v.
KLÖCKNER & CO. AG and Klöckner Industrie-Anlagen GmbH, Appellees.
No. 14-04-00118-CV.
Court of Appeals of Texas, Houston (14th Dist.).
August 18, 2005.
Rehearing Overruled November 17, 2005.
*581 James T. Liston, Francis I. Spagnoletti, Jerry Von Sternberg, Houston, for appellants.
Brian John Hurst, Elizabeth Ann Handschuch, Jay Forrest Utley, Kenya Scott Woodruff, Dallas, for appellees.
Panel consists of Chief Justice HEDGES and Justices FOWLER and SEYMORE.

OPINION
CHARLES W. SEYMORE, Justice.
Appellants bring this interlocutory appeal from an order granting the special appearances of Klöckner & Co. AG ("Klöckner & Co.") and Klöckner Industrie-Anlagen GmbH INA ("Klöckner INA"). We affirm the trial court's judgment.

I. BACKGROUND
Appellants are veterans of the 1991 Persian Gulf War and some of their family members. In 1994, appellants filed suit against approximately eighty defendants alleging that the defendants sold to Iraq the material, equipment, and technology used to create biological and chemical weapons used in the war. The case was removed to federal court, which dismissed for lack of subject matter jurisdiction. Coleman v. Alcolac, 888 F.Supp. 1388, 1404 (S.D.Tex.1995) (order granting motion to dismiss for lack of subject-matter jurisdiction and remanding cause to state court).
Subsequent to remand, Klöckner & Co. and Klöckner INA (collectively, the "Klöckner defendants"), were added as defendants. The Klöckner defendants filed special appearances pursuant to Texas *582 Rule of Civil Procedure 120a, challenging personal jurisdiction. On October 7, 2003, the trial court granted both special appearances, and appellants filed this interlocutory appeal from the trial court's order. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004-05).

II. STANDARD OF REVIEW
The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident defendant within the personal jurisdiction of a Texas court. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex.2002); McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex.1965). A defendant who challenges the trial court's exercise of personal jurisdiction through a special appearance bears the burden of negating all bases of personal jurisdiction. Marchand, 83 S.W.3d at 793; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex.1985).
Whether a trial court has personal jurisdiction over a defendant is question of law, which we review de novo. Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex.2002); Marchand, 83 S.W.3d at 794. However, the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. Marchand, 83 S.W.3d at 794. When, as here, the trial court does not issue findings of facts and conclusions of law with its special appearance ruling, all fact findings necessary to support the judgment and supported by the evidence are implied. Id. at 795; Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990). When the appellate record includes both the reporter's and clerk's records, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. Marchand, 83 S.W.3d at 795.

III. THE LAW OF PERSONAL JURISDICTION
A Texas Court may exercise personal jurisdiction over a non-resident defendant only if (1) the Texas long-arm statute authorizes the exercise of personal jurisdiction, and (2) the exercise of personal jurisdiction comports with the state and federal constitutional guarantees of due process. See id. The Texas long-arm statute permits Texas courts to exercise jurisdiction over a non-resident that "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). The broad language of the "doing business" requirement in section 17.042 permits the statute to reach "as far as the federal constitutional requirements of due process will allow." Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.1991). Thus, the requirements of the long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process requirements. See id.
The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposely established "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Coleman, 83 S.W.3d at 806; Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The purposeful availment requirement ensures that a non-resident will not be haled into a Texas court based solely upon random, fortuitous, or attenuated contacts or the unilateral *583 activity of another party or third person. Guardian Royal, 815 S.W.2d at 226. The defendant's activities, whether they are direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. Coleman, 83 S.W.3d at 806. In conducting a minimum contacts analysis, it is the quality of the defendant's contacts, rather than their minimum number, that is important. Id.
While the jurisdiction of Texas courts always depends on the existence of some minimum contacts, the requisite extent of those contacts varies depending upon whether the litigants are asserting specific or general jurisdiction. Guardian Royal, 815 S.W.2d at 227; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction is established when (1) a defendant's contacts with the forum are purposeful, and (2) the cause of action arises from or relates to a defendant's contacts. Guardian Royal, 815 S.W.2d at 227-28. In contrast, general jurisdiction is established when a defendant's contacts in the forum are continuous and systematic, allowing the forum to exercise jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. Id. at 228. General jurisdiction requires a showing that the non-resident defendant conducted substantial activities within the forum state, a more demanding minimum contacts analysis than for specific jurisdiction. Id. To satisfy due process under either general or specific jurisdiction, the exercise of jurisdiction must not be unreasonable; that is, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. See id. at 228-33.
In this case, the parties agree that only general jurisdiction is applicable. Therefore, we limit our analysis to determining whether the Klöckner defendants' contacts with Texas give rise to general jurisdiction.

IV. EVIDENCE RELEVANT TO MINIMUM CONTACTS

A. Klöckner & Co.
Klöckner & Co. is a German holding company that is headquartered in Duisburg, Germany. Klöckner & Co. does not manufacture any products; rather it sells and markets throughout the world products made by various affiliated companies. There is no evidence to show, and appellants do not contend, that Klöckner & Co. has had any contacts with Texas.

B. Klöckner INA
Klöckner INA, at the time pertinent to this case, was a wholly-owned subsidiary of Klöckner & Co.[1] Klöckner INA is an international engineering and contracting firm that focuses on a broad range of projects in the following industries: power plants and distribution systems; ports; water treatment plants; pipeline and irrigation systems; material handling and transportation systems; glass and ceramics; textiles; wood processing; hotels; and steel production and processing. The only contact that Klöckner INA had with Texas was a single visit to Texas by Klöckner INA's former CEO, Gunther Hering, in which he met with representatives from the Texas engineering firm Haliburton Co. to discuss potential business developments.

*584 C. Subsidiary Corporations
In support of their jurisdictional argument, appellants contend that the Texas contacts of two subsidiary corporations, Klöckner Industrial Installations, Inc. ("Klöckner Industrial") and Union Air Transport ("UAT"), should be imputed to the Klöckner defendants.

1. Union Air Transport
UAT, at the time pertinent to this case, was a wholly-owned subsidiary of Klöckner & Co. UAT is a New York Corporation with its principal place of business in Texas. UAT is a named defendant in this case, but did not contest personal jurisdiction in the trial court and is not a party to the present appeal.

2. Klöckner Industrial
In 1975, Klöckner INA founded Klöckner Industrial, a Delaware corporation with its principal office in New York. Klöckner Industrial is a wholly-owned subsidiary of Klöckner INA. Klöckner Industrial consists of only three employees: a president, a project manager, and a secretary. Klöckner Industrial's president, Klaus Brosig ("Brosig"), testified that one of the purposes for which Klöckner INA established Klöckner Industrial was to secure Exim Bank financing for international construction projects to be built by Klöckner INA. However, since its inception, Klöckner Industrial has expanded its business activities beyond those which it was set up to perform. Brosig testified that Klöckner Industrial is not limited to working on Klöckner INA projects. Rather, Klöckner Industrial has begun to serve as an "exporter of record," whereby it assists other companies in purchasing and exporting U.S. manufactured goods.
Appellants point to various contacts that Klöckner Industrial had with Texas engineering firms between 1986 and 1994, including Hudson Engineering and Project Management Corp., Haliburton Co., Brown & Root, Merex Corp., Xytel-Bechtel, Gulf Interstate Engineering, Howe-Baker Engineers and Bechtel (collectively, "the Texas engineering firms"). However, the only relevant contacts with the Texas engineering firms are those that occurred prior to the time of appellants' injuries. See MedCost, L.L.C. v. Loiseau, 166 S.W.3d 421, 434 (Tex.App.-Austin 2005, no pet. h.) ("The relevant contacts are those up to the time of injury."); Botter v. Am. Dental Ass'n, 124 S.W.3d 856, 865 (Tex.App.-Austin 2003, no pet.) ("Texas authority implies that the relevant contacts are those up to the time of the injury."); AmQuip Corp. v. Cloud, 73 S.W.3d 380, 388 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that telephone calls made after accident were irrelevant to jurisdiction); Scott v. Huey L. Cheramie, Inc., 833 S.W.2d 240, 242 (Tex.App.-Houston [14th Dist.] 1992, no writ) (holding that contract signed after injury occurred was irrelevant to jurisdiction). The latest time period that appellants' injuries could have occurred was the summer of 1991 because this was the time that the last American troops returned home from the Persian Gulf War. Therefore, the only contacts by Klöckner Industrial with the Texas engineering firms that are potentially relevant to our jurisdictional analysis are the ones which occurred prior to the summer of 1991 (the "relevant time period").
During the relevant time period, Klöckner Industrial's president, Klaus Brosig, attended several meetings in Houston, Texas, in an effort to identify technical partners to work with Klöckner Industrial on international projects. Klöckner Industrial also entered into four contracts with Texas-based engineering firms and, at various times, corresponded with them. *585 These contacts are further described below.

(a) Hudson Engineering and Project Management Corp.
On October 19, 1990, Klöckner Industrial entered into a "pre-proposal" agreement with Hudson Engineering whereby the parties agreed to work together exclusively in submitting a bidding proposal for a gas treatment plant project in Bolivia. The agreement contemplated that if the parties were awarded the contract on the project, Klöckner Industrial would serve as prime contractor (exporter of record), and Hudson Engineering, as subcontractor, would "assume responsibility for performing design engineering, procurement of materials and fabricated equipment sourced in the U.S.[,] and supervision of field installation and start-up services." The agreement provided that it was to be governed by the laws of the State of New York.

(b) Haliburton Co.
On April 4, 1991, Brosig, along with Klöckner INA's former CEO, Gunther Hering, traveled to Texas to attend a meeting with representatives from Haliburton Co., Brown & Root, Inc. and Brown & Root Braun. A meeting report indicates that the activities and capabilities of each company were discussed. However, the record does not indicate whether any specific business opportunities were discussed at either of these meetings.
On February 14, 1991, Brosig attended a meeting in Houston, Texas, at which representatives from Haliburton Co. and Brown & Root, Inc. were present. A meeting report indicates that Haliburton Co. was investigating the possibility of engaging in certain countertrade transactions, and that the parties discussed whether Klöckner Industrial could assist in structuring such transactions. The record also contains a letter dated June 12, 1991 that Brosig sent to Dave Stegemeyer, International Credit Manager, Oil Field Services Group, discussing potential countertrade activities.[2]

(c) Brown & Root, Inc.
On August 24, 1988, Brosig attended a meeting in Houston, Texas, with representatives from Brown & Root, Inc. On June 19, 1991, Klöckner Industrial entered into a "pre-proposal" agreement with Brown & Root whereby the parties agreed to work together exclusively in submitting a bidding proposal for a gas treatment plant project in Bolivia.[3] The agreement contemplated that if the parties were awarded the contract on the project, Klöckner Industrial would serve as prime contractor (exporter of record), and Brown & Root, as subcontractor, would "assume responsibility for all technical aspects of the Project[,] supplying to Klöckner the necessary design engineering, materials and fabricated equipment sourced in the U.S. and supervision of field installation and start-up services." The agreement provided that it was to be governed by the laws of the State of New York.
The record also contains a letter, dated April 26, 1988, sent by Wayne T. Mitchell, Manager of Business Development, Mineral & Metal Industries of Brown & Root, *586 Inc., to Brosig declining an invitation to a Klöckner INA exhibit in Germany. In the letter, Mitchell identified other Brown & Root executives who he thought might be interested in attending the exhibit.

(d) Merex Corporation
On February 12, 1991 and April 3, 1991, Brosig met with representatives from Merex Corporation in Houston, Texas. As a result of these meetings, the parties entered into a contract whereby they agreed to cooperate in providing equipment and materials for an international construction project. Under the contract, Klöckner Industrial was to assume the role of "exporter of record."

V. SINGLE BUSINESS ENTERPRISE THEORY
In their first issue, appellants contend that Klöckner & Co., Klöckner INA, Klöckner Industrial, and UAT (collectively "the German entities") operate as a single business enterprise under Texas law. Therefore, appellants contend that the Texas contacts of UAT and Klöckner Industrial should be imputed to the Klöckner defendants for personal jurisdiction purposes.
The "single business enterprise" theory is an equitable doctrine used to disregard the separate existence of corporations when the corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose. Old Republic Ins. Co. v. Ex-Im Servs. Corp., 920 S.W.2d 393, 395-96 (Tex.App.-Houston [1st Dist.] 1996, no writ). Factors to be considered in determining whether corporations operate as a single business enterprise include, but are not limited to, the following: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. Paramount Petroleum Corp. v. Taylor Rental Ctr., 712 S.W.2d 534, 536 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).
Appellants did not plead the "single business enterprise" theory as a basis for imputing the contacts of Klöckner Industrial and UAT to the German defendants. Instead, appellants alleged that the German defendants should be subject to liability based on theories of agency and alter ego, and the German concept of Konzern. Furthermore, appellants did not present the "single business enterprise" theory at the special appearance hearing. Accordingly, the Klöckner defendants argue that appellants have waived their contention that the German entities operate as a single business enterprise.
Appellants respond that the "single business enterprise" theory has just recently begun to emerge in Texas appellate courts, and that a litigant cannot waive a previously undeveloped legal doctrine. Appellants also point out that in Southern Union Co. v. City of Edinburg, the Texas Supreme Court recently declined to decide whether "a theory of `single business enterprise' is a necessary addition to Texas law" for purposes of disregarding corporate structure. 129 S.W.3d 74, 87 (Tex.2003). Nevertheless, before appellants filed the operative pleadings in this case, several Texas appellate courts previously recognized the "single business enterprise" theory as a method by which to disregard the corporate structure of related entities. See, e.g., Hall v. Timmons, 987 S.W.2d 248, 252 (Tex.App.-Beaumont 1999, no pet.); Beneficial Personnel Servs. of Tex., Inc. v. Rey, 927 S.W.2d 157, 165 (Tex.App.-El Paso *587 1996), vacated by agreement, 938 S.W.2d 717 (Tex.1997); Old Republic Ins. Co., 920 S.W.2d at 395-96; Paramount Petroleum Corp., 712 S.W.2d at 536. Accordingly, we conclude that appellants had notice of the "single business enterprise" theory, and thus had the opportunity to assert this theory in order to persuade the trial court to disregard the corporate structure of the German entities.
Appellants further maintain that they should not be deemed to have waived the "single business enterprise" theory because "the fairness and avoidance-of-surprise considerations that ordinarily undergird issues of waiver are lacking due to the fact that [appellants] have long and consistently claimed that the two Klöckner defendants (both German companies) are subject to Texas jurisdiction based, in large part, on the U.S. activities of their subsidiaries." We find this argument unpersuasive. While avoidance of surprise to the opposing party is one of the justifications for requiring a party to plead a theory relied upon, an equally important justification is to prevent an appellate court from reversing an otherwise error-free judgment based on an argument that was not raised in the trial court. It is an established rule of Texas Procedure that, absent fundamental error, an appellate court has no discretion to reverse an otherwise error-free judgment based on a new argument raised for the first time on appeal. Larsen v. FDIC/Manager Fund, 835 S.W.2d 66, 74 (Tex.1992).
Here, the "single business enterprise" theory was not presented to the trial court. Moreover, there is nothing in the record to suggest that the trial court either explicitly or implicitly considered the relevant factors of the "single business enterprise" theory as part of its jurisdictional analysis. Therefore, we have no discretion to reverse the trial court's decision based upon this theory of law. Absent the requisite "fundamental error," we hold that appellants have waived this claim by not presenting it at the trial court level. Accordingly, we overrule appellants' first issue.

VI. AGENCY THEORY
In their second issue, appellants contend that Klöckner Industrial's contacts with Texas should be imputed to Klöckner INA for jurisdictional purposes because Klöckner Industrial served as an agent of Klöckner INA.

A. Standard of Review
The question of whether an agency relationship exists is generally a question of fact. Lyons v. Lindsey Morden Claims Management, Inc., 985 S.W.2d 86, 90 (Tex.App.-El Paso 1998, no pet.); Jorgensen v. Stuart Place Water Supply Corp., 676 S.W.2d 191, 194 (Tex.App.-Corpus Christi 1984, no writ). Here, the trial court did not expressly find the absence of an agency relationship between Klöckner INA and Klöckner Industrial. Nevertheless, all the facts necessary to support the trial court's judgment and supported by the evidence are implied. Marchand, 83 S.W.3d at 795. Accordingly, we construe appellants' argument that an agency relationship exists between Klöckner INA and Klöckner Industrial as a challenge to the legal and factual sufficiency of the evidence to support the trial court's implied finding that no such agency relationship exists. See SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 652 (Tex. App.-Fort Worth 2003, pet. denied) (noting that agency is generally a question of fact and holding that the evidence was legally and factually sufficient to support trial court's implied finding that an agency relationship existed); Townsend v. Univ. Hospital-University of Colo., 83 S.W.3d 913, 921 (Tex.App.-Texarkana 2002, pet. denied) *588 (holding that evidence was factually sufficient to support trial court's implied finding that there was no agency relationship between the parties).
In reviewing the legal sufficiency of evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex.1998); see City of Keller v. Wilson, 48 Tex. Sup.Ct. J. 848, 849 (Tex. June 10, 2005). A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex.2001); Marchand, 83 S.W.3d at 795. More than a scintilla of evidence exists if the evidence of a vital fact furnishes some reasonable basis for differing conclusions by reasonable minds. Lee Lewis Constr., Inc., 70 S.W.3d at 782-83. In reviewing a factual sufficiency challenge, we set aside the trial court's decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986), overruled on other grounds, Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex.2000).

B. Review of Agency Principles
Because the parties dispute whether Klöckner Industrial is an agent of Klöckner INA  an issue which affects our minimum contacts analysis  we turn to the applicable agency principles to resolve the issue. An agent's contacts can be imputed to the principal for purposes of the jurisdictional inquiry. Walker Ins. Servs. v. Bottle Rock Power Corp., 108 S.W.3d 538, 549 n. 4 (Tex.App.-Houston [14th Dist.] 2003, no pet.). However, agency will not be presumed, and the party asserting the relationship has the burden of proving it. Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 760 (Tex.App.-Houston [14th Dist.] 1997, no writ). An agency relationship may be found from the underlying facts or direct and circumstantial evidence showing the relationship of the parties. Id.
An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. Townsend, 83 S.W.3d at 921. The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. Id. Absent proof of the right to control the means and details of the work performed, only an independent contractor relationship is established. Happy Indus. Corp. v. Am. Specialties, Inc., 983 S.W.2d 844, 852 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). The distinction between an independent contractor and an agent is important to the jurisdictional inquiry because the actions of an independent contractor by themselves are not sufficient to subject a non-resident corporation to the jurisdiction of the forum state. O'Quinn v. World Indus. Constructors, Inc., 874 F.Supp. 143, 145 (E.D.Tex.), aff'd, 68 F.3d 471 (5th Cir. 1995).

C. Application of Agency Principles to Klöckner INA and Klöckner Industrial
Appellants contend that Klöckner Industrial is an agent of Klöckner INA, and therefore, all of Klöckner Industrial's contacts with the Texas engineering firms should be imputed to Klöckner INA for jurisdictional purposes. In support of their argument, appellants contend (1) Brosig acted as agent of Klöckner INA when he visited and corresponded with the *589 Texas engineering firms because he solicited the firms to participate in foreign projects with Klöckner INA, (2) the fact that Klöckner Industrial consisted of only three employees demonstrates that it was merely an agent of Klöckner INA, (3) Brosig made representations to the Texas engineering firms that prove an agency relationship between Klöckner Industrial and Klöckner INA, and (4) Klöckner Industrial is an "indispensable" agent of Klöckner INA because, without Klöckner Industrial, Klöckner INA could not (a) legally export U.S.-manufactured machinery and equipment abroad, or (b) obtain financing from the U.S. government-backed Exim Bank to ship U.S. manufactured goods overseas for use on Klöckner INA projects.

1. Solicitation of Business for Klöckner INA
Appellants contend that Brosig acted as an agent of Klöckner INA when he visited and corresponded with the Texas engineering firms because he solicited the firms to participate in foreign projects in which Klöckner INA was involved in the construction. In his deposition, Brosig testified that Klöckner Industrial would sometimes serve as "exporter of record" for U.S.-manufactured goods for projects on which Klöckner INA was involved in construction of the project, but that, on other occasions, Klöckner INA was not involved in the project. The record also reflects that Klöckner Industrial entered into contracts with Klöckner INA whereby Klöckner Industrial agreed to identify "qualified U.S. firms, which can assume the role of technical partners in [Klöckner INA's] international projects." This constitutes some evidence from which it can be inferred that Brosig visited the Texas engineering firms, in part, to promote the business of Klöckner INA.
However, the Klöckner defendants argue there is insufficient evidence that Klöckner Industrial was acting as the agent of Klöckner INA when it contacted the Texas engineering firms because appellants failed to prove the critical element of "control." The Klöckner defendants cite Williamson v. Petrosakh Joint Stock Co., 952 F.Supp. 495 (S.D.Tex.1997) and Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331 (5th Cir.1999) to support their position that the evidence fails to establish the "control" element that is requisite to an agency relationship.
In Williamson, the plaintiffs filed a wrongful death lawsuit against Petrosakh, a Russian corporation. 952 F.Supp. at 496. Petrosakh was owned 95% by Nimir Petroleum Petrosakh Limited ("Nimir Cyprus"), a Cyprus company. Id. Nimir Cyprus' sister company, Nimir Petroleum Company U.S.A., Inc. ("Nimir USA"), which was based in Texas, had a technical services contract with Petrosakh under which Nimir USA would recruit and hire independent contractor consultants to work at the Petrosakh refinery in Russia. Id.
Pursuant to the contract, Nimir USA located and hired Williamson, a Texas resident, to work at the Petrosakh refinery in Russia. Id. After Williamson died in an incident at the refinery, the plaintiffs filed the wrongful death suit against Petrosakh in a Texas court. Id. The plaintiffs asserted that jurisdiction over Petrosakh was proper based on the Texas contacts of Nimir USA. Id. The plaintiffs argued that Nimir USA was Petrosakh's agent because Nimir USA had recruited and hired Williamson on behalf of Petrosakh. Id. at 498. The court, however, held there was insufficient evidence to establish an agency relationship, despite the close corporate relationship between the entities. Id. The court concluded there was no evidence to show that Petrosakh had the right to control the details of Nimir USA's work, even *590 though Nimir USA acted on behalf of Petrosakh in fulfillment of the technical services contract. Id. Therefore, the court found there was only an independent contractor relationship between the entities and declined to impute the Texas contacts of Nimir USA to Petrosakh. Id.
The same issue of control was also present in Dickson Marine, which involved the Louisiana long-arm statute. Similar to Texas, the Louisiana long-arm statute extends to the limits of due process. See 179 F.3d at 336. In Dickson Marine, a vessel owned and operated by Dickson Marine, Inc. ("Dickson") needed repair work while operating off the coast of West Africa. Id. at 335. Dickson contacted Air Sea Broker, Ltd. ("Air Sea"), a Swiss corporation, to arrange for the repairs. Id. Air Sea referred Dickson to Panalpina Transports Mondiaux Gabon S.A. ("Panalpina Gabon"), a sister company, to handle the repairs.[4]Id. During the repair work, the vessel capsized. Id. Dickson filed suit against Panalpina Gabon and Air Sea in a Louisiana court to recover for property damage to the vessel. Id. Dickson asserted that jurisdiction over Panalpina Gabon was proper based on the Louisiana contacts of Air Sea because Air Sea acted as Panalpina Gabon's agent. Id. at 338.
The court, however, found that there was insufficient evidence to show that Panalpina Gabon asserted sufficient control over Air Sea to establish an agency relationship. Id. The court noted it was undisputed that Air Sea had frequently benefitted Panalpina Gabon by assisting maritime companies in contracting with Panalpina Gabon for services to be performed in Gabon. Id. While the evidence showed that Air Sea was a "middleman" who assisted vessel owners in contracting with the Panalpina Worldwide Subsidiaries for maritime services, the court held that those facts alone were not sufficient to establish the control required to prove an agency relationship. Id. at 338.
Similarly, in this case, we find there is insufficient evidence in the record to show that Klöckner INA controlled Klöckner Industrial, or its president, Klaus Brosig. We find no evidence that Klöckner INA directed Brosig to travel to Texas to meet with the Texas engineering firms, nor do we find any evidence that Klöckner INA controlled the means and details of Brosig's work. Moreover, we find no evidence that Klöckner Industrial had actual authority to negotiate or enter into contracts on behalf of Klöckner INA. Cf. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992) (holding that under the facts and circumstances of the case, it could be implied that the alleged agent entered into the contract at the direction of and on behalf of the principal).
Although Brosig may have contacted the Texas engineering firms for the mutual benefit of both Klöckner Industrial and Klöckner INA, we find that such evidence alone is insufficient to establish an agency relationship. The missing element is Klöckner INA's right to control the means and details of Klöckner Industrial's work. See Gutierrez v. Cayman Islands Firm of Deloitte & Touche, 100 S.W.3d 261, 271 (Tex.App.-San Antonio 2002, pet. dism'd) (finding that evidence failed to establish an agency relationship between related accounting firms, even though one accounting firm performed auditing work for the other, because there was no evidence that one had the right to control the other's work).

2. Limited Size of Klöckner Industrial
*591 Although appellants cite no direct evidence of control, they contend that the fact that Klöckner Industrial consisted of only three employees demonstrates that it was merely an agent of Klöckner INA. Appellants contend that Klöckner Industrial lacked any in-house engineering capabilities and assert that such a small company could not physically implement the construction projects in which it solicited the Texas engineering firms to participate. Therefore, appellants assert that any actual construction contracts Klöckner Industrial obtained were performed by and through Klöckner INA.
However, Brosig testified that Klöckner Industrial's work is not restricted to projects in which Klöckner INA was involved in the project. Brosig further testified that Klöckner Industrial does not need financial support from Klöckner INA in order to serve as "exporter of record" or to export U.S. equipment and material. The record further indicates that Klöckner Industrial was able to independently generate revenues, operate with sufficient capital, pay its own salaries and expenses, and maintain separate property. Under these circumstances, we will not presume that an agency relationship existed merely because of Klöckner Industrial's limited resources and personnel.

3. Representations Made by Brosig
Appellants also rely on Brosig's testimony concerning representations he made to the Texas engineering firms. In his deposition, Brosig testified as follows:
Q: Now, I take it when you would go [to] the various businesses, like Brown & Root or Haliburton or Hudson Engineering, and solicit their business to represent them in order to be the prime contractor for major projects overseas that you wouldn't come in and represent that you were asking them to contract with [Klöckner Industrial] that had total assets of $1.7 million for one hundred million dollar projects overseas, were you?
A: [Witness nodded head].
Q: You were representing that you were coming in as the representative of Klöckner INA Germany, weren't you?
A: Yes.
Q: And I would think that if I, Joe Blow, with an office in Garden City, New York and one secretary walked into M.W. Kellog and said, I want you to use me as prime contractor on a one hundred million dollar project, they would laugh me out of the door. But now when you walk in, they see you, and what you tell them is that, I'm a representative of Klöckner INA Germany, don't you?
A: No. I represented I'm a member of Klöckner INA in New York.

. . .
Q: Isn't true that you represented to those customers that you were there to speak on behalf of Klöckner INA Germany?
A: [No audible answer].

. . .
Q: Mr. Brosig, you're under oath to tell the truth.
A: Yes.
Q: The truth is the truth.
A: Can you please phrase this question again?
Q: When you were in Houston during '92 and '93, and at any other time, soliciting customers, didn't you represent to those potential customers that you were representing the interests of Klöckner INA Germany?
A: I represented interests of Klöckner INA international group.
*592 Q: Which includes Klöckner INA Germany, doesn't it?
A: Yes.
An alleged agent may testify to facts concerning his authority to act on behalf of the principal. See Cook v. Hamer, 158 Tex. 164, 309 S.W.2d 54, 58 (1958). However, we find that Brosig's broad assertion that he represented the interests of Klöckner INA international group does not establish a sufficient factual basis to prove an agency relationship. Moreover, to the extent that appellants' argument can be construed as an assertion that Brosig's representations to the Texas engineering firms gave him apparent authority to act on behalf of Klöckner INA, we note that only an alleged principal's words or conduct that are represented to the third party can clothe an alleged agent with apparent authority. BML Stage Lighting, Inc. v. Mayflower Transit, Inc., 14 S.W.3d 395, 401 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Therefore, an agency relationship cannot be established through any representations that Brosig made to the Texas engineering firms.

4. "Indispensable" Agent Theory
In further support of their claim of agency, appellants contend that Klöckner Industrial was an "indispensable" agent of Klöckner INA because, without Klöckner Industrial, Klöckner INA could not (1) legally export U.S.  manufactured machinery and equipment abroad, or (2) obtain financing from the U.S. government  backed Exim Bank to ship U.S. manufactured goods overseas for use on Klöckner INA projects.
Brosig testified that on certain projects in which Klöckner INA was involved in construction of the project, Klöckner Industrial would assist Klöckner INA's foreign customer in obtaining U.S. financing so that the foreign customer could purchase U.S. machinery and equipment to be used during construction. On these projects, Klöckner Industrial would also serve as "exporter of record." Brosig testified that United States law requires the "exporter of record" to be an American company, and that Exim Bank financing is only available when the "expert of record" is an American company. Therefore, appellants contend that Klöckner Industrial, as an American company, performed an "indispensable" function for Klöckner INA.
The record clearly establishes that on certain occasions, Klöckner Industrial performed a beneficial function for Klöckner INA. But the mere existence of a subsidiary corporation that performs a beneficial function for the parent does not automatically establish the existence of an agency relationship. Where, as here, there is an absence of any evidence to show that the parent controls the subsidiary's work, we do not presume the existence of an agency relationship. See Schultz, 956 S.W.2d at 760 (stating that an agency relationship will not be presumed).
After reviewing all of the evidence, we conclude that there is some evidence supporting the trial court's implied finding that Klöckner Industrial was not acting as the agent of Klöckner INA when it contacted the Texas engineering firms. See Lee Lewis Constr., 70 S.W.3d at 782-83. Moreover, we conclude that the trial court's implied finding that Klöckner Industrial was not the agent of Klöckner INA with respect to these contacts is not manifestly unjust. See Pool, 715 S.W.2d at 635. Therefore, we find that the evidence is legally and factually sufficient to support the trial court's implied finding that no agency relationship existed with respect to Klöckner Industrial's contacts with the Texas engineering firms.
Accordingly, we overrule appellants' second issue.

*593 VII. GENERAL JURISDICTION
In their third issue, appellants contend that the Texas contacts of Klöckner Industrial and UAT, combined with the singular direct contact by Klöckner INA's former CEO, support a finding that Klöckner INA and Klöckner & Co. are subject to the general jurisdiction of Texas courts. However, because we have determined that the Texas contacts of Klöckner Industrial and UAT cannot be imputed to Klöckner INA and Klöckner & Co. for jurisdictional purposes, the issue is narrowed to whether Klöckner INA's single contact with Texas by Klöckner INA's former CEO is sufficient to support general jurisdiction.
Applying the guidelines for analyzing general jurisdiction, we conclude that this single Texas contact is not the kind of continuous and systematic general business activity that is necessary to justify the assertion of general jurisdiction. See Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868 (concluding that a single business trip to Texas for the purpose of negotiating a contract could not be regarded as a contact of a continuous and systematic nature). Accordingly, we find there is no basis for the assertion of general jurisdiction over the Klöckner defendants and overrule appellants' third issue.[5]

VIII. CONCLUSION
We hold that because appellants failed to present the "single business enterprise" theory to the trial court, they have waived their contention that the German entities operate as a single business enterprise. We further hold that there is some evidence to support the trial court's implied finding that Klöckner Industrial is not the agent of Klöckner INA, and that this finding is not against the great weight and preponderance of the evidence. Accordingly, we conclude that the Texas contacts of Klöckner Industrial and UAT cannot be imputed to the Klöckner defendants under either a single business enterprise theory or an agency theory.
Having concluded that the Texas contacts of Klöckner Industrial and UAT cannot be imputed to the Klöckner defendants, the only relevant Texas contact for jurisdictional purposes is the single visit to Texas by Klöckner INA's former CEO. We hold that this single contact is insufficient to support general jurisdiction over the Klöckner defendants. Accordingly, we affirm the trial court's judgment granting the special appearances of the Klöckner defendants.
NOTES
[1] Klöckner INA was owned 100% by Klöckner & Co. until 1996, when Klöckner & Co. sold 75% of Klöckner INA to NUKEM Group. NUKEM Group subsequently purchased the remaining 25% of Klöckner INA in 1998.
[2] The record further contains a memo and a fax sent from Brosig to Gunther Hering regarding Haliburton Co.'s interest in funding certain transactions. However, we find no evidence that these documents were written for or sent to Haliburton Co. in Texas.
[3] Brosig testified that Klöckner Industrial sought to work on the Bolivian project with Brown & Root after the plans to work on the project with Hudson Engineering did not come to fruition.
[4] Air Sea and Panalpina Gabon are both subsidiaries of Panalpina World Transport, Inc.
[5] Having concluded that the evidence fails to establish that the Klöckner defendants had minimum contacts with Texas, we do not reach appellants' fourth issue addressing the "fair play and substantial justice" prong of the personal jurisdiction analysis. See Guardian Royal, 815 S.W.2d at 228 ("Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice.").