**Petition Denied, Appeal Dismissed, and Opinion filed June 4, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00378-CV

**KHYATI UNDAVIA, MINU RX, LTD., AND MINU GP, LLC, Appellants**

**V.**

**AVANT MEDICAL GROUP, P.A. D/B/A INTERVENTIONAL SPINE ASSOCIATES AND BRETT L. GARNER D/B/A ALLIED MEDICAL CENTERS, Appellees**

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-22186**

## O P I N I O N

Appellants Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC petitioned this court to allow a permissive interlocutory appeal of the April 24, 2015 partial denial of their motion for summary judgment in favor of appellees Avant Medical Group, P.A. d/b/a Interventional Spine Associates and Brett L. Garner d/b/a Allied Medical Centers. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West 2015).    The appellees

opposed the petition. We deny the petition for permission to appeal and dismiss the appeal.

## I. BACKGROUND

Kkyati Undavia is a pharmacist, who owns Minu Rx, Ltd. d/b/a Memorial Compounding Pharmacy. Undavia also owns Providian Holding, Inc., which, in turn, owns 2918 San Jacinto Street in Houston, Texas (the "Building"). Minu RX operates on the lower floor of the Building. Starting in 2009, Nisal Corporation and Sterling Practice Management, LLC leased the second floor of the Building from Providian.

Brett L. Garner is the president and director of Nisal. Garner is a member-manager and registered agent of Sterling. Avant Medical Group, P.A. d/b/a Interventional Spine Associates provides medical doctor services. Garner is a chiropractor and owns the business name Allied Medical Centers. Sterling is a management service organization that manages some non-medical business operations of Avant, including billing and collection matters.

The lease between Providian, Nisal, and Sterling terminated in 2013, and Nisal and Sterling sued Providian in County Court at Law No. 4 on September 5, 2013, for breach of the lease agreement for failure to return the security deposit (the "Providian lawsuit"). The parties entered into a settlement agreement and executed a mutual release on October 3, 2013, and Nisal and Sterling nonsuited their claims against Providian with prejudice.

Appellees Avant Medical Group and Garner filed suit in district court on April 22, 2014 against appellants Undavia, Minu RX, and MINU GP. In this lawsuit, appellees pled that, while they were tenants in the building, all mail was delivered to the Building's main address and Undavia collected and distributed it to the tenants. Appellees alleged that Undavia would frequently take letters containing checks from the mail, endorse the checks with the name and bank account of Minu Rx and deposit them

2

into at least two bank accounts at Compass Bank. Appellees claim that they have identified over $20,000 in checks that were stolen by appellants.

Appellees sued Undavia and Minu Rx, for conversion and theft, violations of the Texas Theft Liability Act, fraud, constructive trust and equitable lien, money had and received, breach of contract, breach of fiduciary duty, and statutory conversion. Appellees also alleged that Minu GP, LLC is the active general partner of Minu Rx and, therefore, is vicariously liable for Minu Rx's obligations.[1]

Undavia answered that she is not liable in her individual capacity for appellees' claims. Undavia, Minu Rx, and MINU GP further asserted that the mutual release in the Providian lawsuit bars the current lawsuit, and brought counterclaims for declaratory judgment regarding their rights, status, and legal relations with respect to the mutual release and breach of the mutual release.

On January 30, 2015, appellants filed a motion for summary judgment, claiming that (1) appellees released their claims by executing the mutual release; (2) res judicata bars appellees' claims because they nonsuited their claims with prejudice; (3) appellees are foreclosed from bringing a conversion claim for the checks because they never actually received delivery of the checks; and (4) the statute of limitations bars appellees' claims.

Appellees responded that (1) the mutual release does not concern the subject matter or claims asserted in the current lawsuit and, therefore, does not bar their claims; (2) the parties to the mutual release are not the same parties to this action, and appellants' "agency" theory has no legal basis or factual support; (3) because the claims and parties of the current suit are different than in the previous lawsuit, res judicata does not apply to bar their claims; (4) appellees have pleaded a viable action for conversion;

---

[1] Appellees also sued Compass Bank for statutory conversion, money had and received, and negligence. Appellees, however, nonsuited Compass Bank on April 16, 2015.

and (5) the statute of limitations does not bar their claims or, alternatively, the discovery rule and appellants' fraud toll the statute of limitations.

On April 24, 2015, the trial court signed an amended order granting summary judgment on Nisal's claims and denying the motion for summary judgment as to the claims brought by all other appellees. The April 24, 2015 order granting permission to appeal states, in relevant part:

> This Court finds that the controlling question of law to be determined on appeal is whether the release (a) signed in a prior lawsuit between (b) parties intimately related to the parties in the current lawsuit is sufficient to release the claims asserted between the current Plaintiffs and Defendants Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC in this lawsuit. The legal interpretation of the release, therefore, is controlling. Imbedded in that controlling question is the effect of the agency relationship between signatories of the release when applying that release in a future series of claims that still refer back to the underlying dispute engendering the release in the first place. Further, the controlling question involves the extent to which principal-agent analysis applies in the construction of a release.

Appellants seek permission from this court to pursue an interlocutory appeal of the April 24, 2015 order partially denying their motion for summary judgment.

## II. STANDARD FOR PERMISSIVE APPEALS

Appellate courts do not have jurisdiction over interlocutory appeals in the absence of a statutory provision permitting such an appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Hebert v. JJT Constr.*, 438 S.W.3d 139, 140 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Appellants bring this appeal pursuant to Section 51.014(d) of the Civil Practice and Remedies Code, which provides the following with respect to permissive interlocutory appeals:

> (d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

4

(1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

(2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d).

In its statement of permission granting an interlocutory appeal under section 51.014, a trial court must (1) identify the controlling question of law as to which there is a substantial ground for difference of opinion and (2) state why an immediate appeal may materially advance the ultimate termination of the litigation. Tex. R. Civ. P. 168; *Gulf Coast Asphalt Co. v. Lloyd*, 457 S.W.3d 539, 543−44 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The proper scope of a permissive appeal is the determination of controlling legal issues, about which there are legitimate disagreements, necessary to the resolution of the case. *Id.* In *Gulf Coast Asphalt*, this court explained the following with respect to that standard:

> "[A] controlling question of law is one that deeply affects the ongoing process of litigation. If resolution of the question will considerably shorten the time, effort, and expense of fully litigating the case, the question is controlling. Generally, if the viability of a claim rests upon the court's determination of a question of law, the question is controlling. . . . Substantial grounds for disagreement exist when the question presented to the court is novel or difficult, when controlling circuit law is doubtful, when controlling circuit law is in disagreement with other courts of appeals, and when there simply is little authority upon which the district court can rely. . . . Generally, a district court will make [a finding that the appeal will facilitate final resolution of the case] when resolution of the legal question dramatically affects recovery in a lawsuit."

*Id.* at 544−45 (quoting Renee Forinash McElhaney, *Toward Permissive Appeal in Texas*, 29 St. Mary's L.J. 729, 747−49 (1998)).

When the trial court has permitted the appeal from an interlocutory order that would not otherwise be appealable, the party seeking to appeal must petition the court of appeals for permission to appeal. Tex. R. App. P. 28.3(a). The party filing the petition,

must "argue clearly and concisely why the order to be appealed involves a controlling issue of law as to which there is a substantial ground for difference of opinion and how an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. R. App. P. 28.3(e)(4).

## II. ANALYSIS

### A. Whether a Controlling Issue of Law as to which a Substantial Ground for Difference of Opinion Exists

Appellants argue that this appeal involves a controlling issue of law, i.e., if the mutual release encompasses appellees' claims, those claims are barred. As this court explained, a controlling question of law (1) is one that deeply affects the ongoing process of litigation, (2) the resolution of which will considerably shorten the time, effort, and expense of fully litigating the case, and (3) the viability of the claim depends on the court's determination of the question of law. *Gulf Coast Asphalt Co.*, 457 S.W.3d at 544−45. Therefore, according to appellants, if their position is correct, this appeal will considerably shorten the time, effort, and expense of litigating the case and affect the viability of appellees' claims.

Appellants further argue that a substantial ground for difference of opinion exists because the controlling issue of law before the court is novel and there is little or no authority upon which the trial court can rely. Appellants contend that each appellee is an agent, officer, employee, or servant of either Sterling or Nisal—both of which were signatories to the mutual release, and each appellant is an agent, officer, employee, or servant of Providian—the third signatory to the mutual release.[2] The issue identified by the trial court is whether a plaintiff not specifically named, but nonetheless encapsulated by the categories of defined persons or parties in a release, is so connected to the subject

---

[2] Appellants claim the following agency relationships exist: (1) Garner is an agent and officer of Sterling and Nisal; (2) Avant is an agent of Sterling; (3) Sterling is an agent of Avant; (4) Garner is an agent of Avant; (5) Undavia is the owner, director, and agent of Providian; and (6) Minu Rx is property manager of Providian.

matter giving rise to a release and to the signatories of a release that it, too, is bound by the release. Thus, appellants contend that appellees, who are not specifically named by the mutual release, are so connected to the signatories of the mutual release and to the dispute that gave rise to the lawsuit that they are also bound by the release.

Appellants state that it is well-established that "[a] tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Tex. 1984).[3] However, appellants state that no Texas case has addressed the extent or the circumstances under which a release can bind an unnamed plaintiff.

In connection with the issue of whether a release can bind an unnamed plaintiff, appellants further contend that the interpretation of "agent" in the context of a release raises the following novel issue: How does a court determine whether a party qualifies as an agent of a signatory such that he is bound by a release? Appellees respond that whether a party is an agent of a signatory is a question of fact for the jury. Appellants maintain that this cannot be the law in Texas. Appellants assert that a defendant should not have to fully litigate a plaintiff's claim, which falls within the scope of the release, to obtain a ruling that the release includes the claim and is therefore barred as a matter of law. Appellants reason that the application of a fact-driven inquiry will thwart releases, prevent finality, and force parties to contemplate and specifically name each

---

[3] *See also Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 18 (Tex. App.—San Antonio 1998, no pet.) (op. on reh'g) (holding that release encompassed, not only the plaintiff's claims against the car dealership, but also its employees who were associated with the sale of the car); *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 114 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (op. on reh'g) (holding that a release, contained in a health club membership, which stated that the buyer released any and all claims against the club, also included defendants who had "participate[d] in the design, planning, construction, staffing or supervision" of the club and explaining that, "[i]n releasing 'the Club' from any injuries suffered while participating in the center's programs, it is clear that Winkler intended to release any claim against all individuals and entities involved in the operation, maintenance, and administration of the center").

party to the release.

Appellants' position, however, is contrary to well-established Texas law. "'[A]gency will not be presumed, and the party asserting the relationship has the burden of proving it.'" *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (quoting *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.)); *see also Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 842 (Tex. App.—Dallas 2014, no pet.) ("'Texas courts never presume an alleged agency relationship exists.'" (quoting *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 83 (Tex. App.—Houston [1st Dist.] 2008, no pet.))). This court, among other courts, has expressly held that "[t]he question of whether an agency relationship existed is generally a question of fact." *Coleman*, 180 S.W.3d at 587.[4]

Even if a mutual release were to bind nonsignatory plaintiffs, they cannot be bound unless they are agents of the signatories. The existence of any agency relationship in this case is a question of fact. Fact issues are not within the scope of a permissive appeal. *See Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The statute does not contemplate permissive appeals of summary judgments where the facts are in dispute. Instead, permissive appeals should be reserved for determination of controlling legal issues necessary to the resolution of the case.").

Appellants argue, in their reply, that the only relevant inquiry is appellees' "connection" to a party specifically enumerated by the release. However, the order states that "[i]mbedded in that controlling question is the effect of the agency

---

[4] *See also LVI Facility Servs., Inc. v. Watson Rd. Holding Corp.*, No. A-12-CV-672-LY, 2013 WL 5519588, at *9 (W.D. Tex. Oct. 1, 2013) (quoting *Coleman*, 180 S.W.3d 587); *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S. W.3d 638, 652 (Tex. App.—Fort Worth 2003, pet. denied); *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied); *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App.—Corpus Christi 1984, no writ).

relationship" and the "controlling question involves the extent to which principal-agent analysis applies in the construction of a release." Thus, the very question presented in this permissive appeal depends on the existence of agency relationships between the signatories to the release and the nonsigatory parties to the suit.

Thus, we conclude that, due to fact issues regarding the existence of any agency relationships, there is no controlling issue of law as to which there is a substantial ground for difference of opinion.

**B.**   **Whether the Appeal Materially Advances the Ultimate Termination of the Litigation**

Appellants argue that, if the release applies to all parties, the granting of their motion for summary judgment would dispose of all of appellees' claims against them. Appellees respond that factual disputes exist as to which agency relationships exist and in which capacity the acts and omissions give rise to the current lawsuit were taken. As addressed above, agency relationships are never presumed and are generally questions of law, which will be decided at trial on the merits. *See Greenfield Energy, Inc.*, 252 S.W.3d at 733; *Coleman*, 180 S.W.3d at 587. Therefore, we conclude that this appeal would not materially advance the ultimate termination of the litigation.

### III. Conclusion

Appellants have failed to demonstrate this case presents a controlling question of law about which there is a substantial ground for difference of opinion or that the appeal may materially advance the ultimate termination of the litigation. Accordingly, we deny the petition and dismiss the appeal for lack of jurisdiction.

/s/   Tracy Christopher
        Justice

Panel Consists of Justices Christopher, Brown, and Wise.

9