**LAREDO MEDICAL GROUP,**
Appellant,

v.

**Oscar N. LIGHTNER, M.D., Appellee.**

No. 04–01–00416–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 15, 2004.

W. Wendell Hall, Rosemarie Kanusky, Fulbright & Jaworski, L.L.P., San Antonio, C.M. Zaffirini, Guadalupe Castillo, Zaffirini & Castillo, Laredo, for appellant.

Nissa M. Sanders, Thomas H. Crofts, Jr., Crofts & Callaway, P.C., Benjamin R. Bingham, Royal B. Lea, III, Bingham & Lea, P.C., San Antonio, Arnulfo Gonzalez, Jr., Law Office of Arnulfo Gonzalez, Laredo, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

PAUL W. GREEN, Justice.

Laredo Medical Group's Motion for Partial Rehearing En Banc is granted. *See* Tex.R.App. 49.7. Accordingly, we withdraw the panel's opinion and judgment and substitute the following.

\* \* \*

This case involves a salary dispute between Laredo Medical Group ("LMG") and its employee, Dr. Oscar Lightner. Lightner claims his employment agreement with LMG created a duty of good faith and fair dealing between the parties that LMG breached. He also claims he was not bound by the agreement's covenant not to compete. We disagree and reverse the trial court's judgment.

### Background

In October 1995, Lightner sold his medical practice to LMG and became one of its employees. Under Lightner's employment agreement, LMG guaranteed Lightner's income for the first three years of his employment, but after that time Lightner's income would be based on a percentage of the total revenue LMG collected from his practice. The agreement also included a non-compete provision. During the course of Lightner's employment, LMG did not collect all of his accounts receivable. Lightner claimed this resulted in an income shortfall of approximately one-half million dollars over the four-year term of his employment.

In June 1999, Lightner filed suit against LMG claiming LMG breached its duty of good faith and fair dealing by failing to adequately collect his accounts receivable. Four months later, Lightner resigned from his position at LMG. LMG filed a counterclaim against Lightner seeking to enforce the non-compete provision in

Lightner's employment agreement and to recover damages.

Based on jury findings that LMG maliciously breached its duty of good faith and fair dealing to Lightner,[1] the trial court rendered judgment for Lightner for actual and punitive damages. Lightner's claim for attorney's fees was denied. The court further ordered that LMG take nothing on its counterclaim.

LMG challenges the jury's findings claiming: (1) it owed no duty of good faith and fair dealing; (2) there is insufficient evidence that any duty of good faith and fair dealing was breached; (3) there is insufficient evidence to support the award of actual or punitive damages; (4) there is insufficient evidence to prove it acted with malice; (5) the amount of post-judgment interest should be reduced; and (6) there is no evidence to support the jury's finding regarding the covenant not to compete.

### Duty of Good Faith & Fair Dealing

■ Texas does not recognize a cause of action for breach of a duty of good faith and fair dealing in the context of an employer/employee relationship. *See City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex.2000). No distinction is made for employment governed by an express agreement. *Id.* However, Lightner claims LMG nevertheless owed him a duty of good faith and fair dealing because the power of attorney provisions within the parties' employment and asset-purchase agreements created an agency relationship. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 593–94 (Tex.1992) (recognizing principal-agent relationship gives rise to fiduciary duty encompassing duty of good faith and fair dealing). It is essential to an agency relationship, however, that the principal have

the right to "assign the agent's task and to control the means and details of the process by which the agent will accomplish the task." *Walker v. Fed. Kemper Life Assurance Co.,* 828 S.W.2d 442, 452 (Tex. App.-San Antonio 1992, writ denied). Thus, even if a person acts for and on behalf of another, if he is not under the other person's control, an agency relationship does not exist. *Id.* The agreements between the parties contain provisions that make LMG Lightner's attorney-in-fact for the collection of fees. Although the appointment of an attorney-in-fact ordinarily creates an agency relationship, there is no agency relationship here because there is no evidence LMG was under Lightner's control. *See Walker,* 828 S.W.2d at 452.

■ Lightner also argues LMG owed him a duty of good faith and fair dealing because he trusted LMG with his property interest in his accounts receivable, citing *Manges v. Guerra,* 673 S.W.2d 180 (Tex. 1984). We find Lightner's argument unpersuasive for two reasons. First, the *Manges* court recognized that a holder of executive rights to a mineral estate owes a fiduciary duty to the non-executive interest. *Manges,* 673 S.W.2d at 183. This case is not comparable to that situation. Second, Lightner's argument is based on the premise that the fees generated by his work belonged to him. This is simply not true. The parties' employment agreement specifically provides that "all fees and other revenues attributable to [Lightner's] services . . . belong to [LMG]."

Finally, Lightner argues that a "special relationship," implicating a duty of good faith and fair dealing, existed between the parties by virtue of an imbalance of bargaining power. A "special relationship" has been recognized where there is unequal bargaining power between the par-

---

1. Although Lightner pleaded numerous other causes of action, including a claim for breach of contract, only the duty of good faith and fair dealing cause was submitted to the jury.

ties and a risk exists that one of the parties may take advantage of the other based upon the imbalance of power, e.g., insurer-insured. See *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). But the supreme court has ruled that the elements which make a relationship special are absent in the relationship between an employer and an employee. See *City of Midland v. O'Bryant*, 18 S.W.3d at 215.

We hold that LMG owed no duty of good faith and fair dealing to Lightner.

## Covenant Not To Compete

■ The employment contract that Lightner actually signed failed to include a page that contained provisions addressing the restrictions placed on Lightner by his non-compete agreement with LMG.[2] An earlier unsigned draft of the document that included the omitted provisions was reviewed by Lightner's attorney. When the final document was prepared for signatures, one of the pages was included twice and an apparent gap in the text from one of the pages to the next indicated a skipped page. Even so, all the pages were numbered consecutively. LMG claims the page was omitted from the final document by an inadvertent mistake, that Lightner knew of the non-compete agreement and its terms, and that he even accepted $100,000 in exchange for it.[3] Accordingly,

2. The omitted language provided: (1) Recognition and acknowledgment that time, effort and expense has been devoted by LMG to establish its patient base and hiring staff to treat the patients; that the patient base is a valuable asset of LMG; that Physician is given access to the patient base under the agreement; and that Physician's solicitation of the patient base outside of the agreement would be highly damaging to LMG. (2) The agreement's geographical limitation of a twenty-five mile radius. (3) The liquidated damages provision in the event of violation. (4) Physician's acknowledgment that the restrictions are reasonable in scope and essential to LMG's business interests. (5) Provision for Physician's voluntary termination of non-compete restrictions upon payment to LMG of $200,000.

3. The signed agreement included the following non-compete provisions:

**ARTICLE VIII**

**COVENANT NOT TO COMPETE**

**A. Covenant Not to Compete.** For and in consideration of Physician's agreement to the terms and conditions of the covenant not to compete and other covenants set forth in this Article VIII, Medical Group shall pay to the Physician a one-time amount of $100,000, which shall be paid on or before the Commencement Date. Physician hereby agrees that, for the duration of Physician's employment with Medical Group, and for a period of two (2) years (twenty-four (24) months) after termination of employment with Medical Group for any reason at any time, Physician shall not in any manner directly or indirectly:

1. Disclose or divulge to any other person, partnership, corporation, business organization, firm, or other entity whatsoever, or use for Physician's own benefit or for the benefit of any other person, partnership, corporation, business organization, firm, or other entity directly or indirectly in competition with Medical Group, any knowledge, information, business methods, techniques, or patient lists, letters, files, records, or other information, of Medical Group other than as may be required by a court with jurisdiction over Physician and Medical Group.

2. Solicit, divert, or otherwise interfere with the patients or their immediate family members, patronage, employees, or agents of Medical........

.... (omitted provisions)

**E. Waiver of Practice Restriction.** The practice restriction in subparagraph 3 of paragraph A of this Article shall be waived only in the following circumstances:

1. If Medical Group elects to waive the restriction upon an affirmative recommendation of not less than seventy-five percent (75%) of the Board, or

2. If Medical Group elects to terminate Physician's employment for any reason other than one or more of the reasons listed in subparagraphs 1 through 6 paragraph A of Article VII.

LMG says either Lightner is bound by the non-compete agreement, or in the alternative it is entitled to the return of its $100,000.

The jury found the omission of the page was not a mutual mistake, and the trial court thereupon refused to enforce the non-compete agreement. LMG challenges this jury finding claiming that mutual mistake was established as a matter of law and that the finding should be disregarded.

We see the question as being whether the parties had a mutual understanding and intent that Lightner was to be bound by a non-compete agreement when he signed the employment contract with LMG. That question can be resolved in the affirmative simply by considering Lightner's testimony and by examining the document Lightner actually signed.

Lightner testified he was aware his employment agreement included a covenant not to compete, but he disclaimed any interest in it and denied knowing its terms. He said "It was not an important issue for me in signing [the agreement]." Moreover, the document Lightner signed clearly contains a promise not to compete against LMG for two years after termination. And the agreement expressly acknowledges that he was to be paid $100,000 "[f]or and in consideration of [Lightner's] agreement to the terms and conditions of the covenant not to compete."

Lightner says he was "completely unaware" of the omitted provisions, which he says destroys any mutual understanding and intent that would support an agreement. We disagree. The evidence conclusively establishes Lightner's intent to be bound by the covenant not to compete. Lightner's claim not to know all the terms of the covenant does not avoid his responsibilities under the agreement he made. *See Roland v. McCullough*, 561 S.W.2d 207, 213 (Tex.Civ.App.-San Antonio 1978,

writ ref'd n.r.e.) ("A contract may not be avoided on the ground of mistake of fact where it appears that ignorance of the facts was the result of carelessness, indifference, or inattention.").

■ "Reformation is a proper remedy when the parties have reached a definite and explicit agreement, understood in the same sense by both, but, by their mutual or common mistake, the written contract fails to express this agreement." *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 377 (Tex.1965). Because it is clear the parties had a non-compete agreement, but it is unclear from the signed document what all the terms of the agreement were, the matter must be remanded to the trial court to reform the written contract to conform to the terms of the agreement.

### Conclusion

Because we hold LMG owed Lightner no duty of good faith and fair dealing, we reverse and render judgment that Lightner take nothing from LMG. We further hold that the omission of the page from the written employment contract was a mistake that did not invalidate Lightner's explicit agreement not to compete. Accordingly, the matter is remanded to the trial court to reform the written contract to conform to the actual agreement of the parties, and to determine the reasonableness and enforceability of the covenant not to compete.

Concurring and dissenting opinion by CATHERINE STONE, Justice, joined by ALMA L. LÓPEZ, Chief Justice.

CATHERINE STONE, Justice, concurring and dissenting, joined by ALMA L. LÓPEZ, Chief Justice.

I concur in the opinion of the court reversing and rendering judgment that Dr. Oscar Lightner take nothing from Laredo

Medical Group. I respectfully dissent, however, from the court's decision on the issue of the non-competition agreement.

The majority describes the issue as "whether the parties had a mutual understanding and intent that Lightner was to be bound by a non-compete agreement when he signed the employment contract with LMG." In answering this question in the affirmative, I believe the majority ignores parts of Lightner's testimony and engages in its own credibility determinations.

By relying on *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376 (Tex.1965), the majority apparently determines that the omission of the page from the agreement was the result of mutual mistake, yet the majority does not cite to any record evidence indicating that Lightner was in any way responsible for the failure to include the missing page or that Lightner was aware of the provisions contained on the omitted page. Rather, the majority concludes that Lightner was careless, indifferent, or inattentive because he stated he was unaware of the terms of the covenant not to compete. In reaching this conclusion the majority makes a credibility determination that Lightner was aware of the provisions, but just chose to ignore them. This is in direct conflict with his testimony that the provisions in question—two-year and twenty-five-mile non-compete restrictions—were never discussed. The majority's conclusion also fails to acknowledge Lightner's testimony that he understood the $100,000 "was part of the deal to join LMG. In other words, a bonus for coming into the group." This testimony is not indicative that the parties had reached a definite and explicit agreement that was omitted from the written agreement by mutual mistake. These credibility determinations were for the jury to make. I

respectfully dissent from this court's decision to engage in such determinations.