Affirmed and Memorandum Opinion filed January 20, 2009








Affirmed and Memorandum Opinion filed January 20, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00550-CV

_______________

 

ROBERT MOE AND CYNTHIA MOE, Appellants

 

V.

 

OPTION ONE MORTGAGE CORPORATION, Appellee

                                                                                                                                               


On Appeal from the 55th District Court

Harris County, Texas

Trial Court Cause No. 2006-35223

                                                                                                                                               


 

M E M O R A N D U M    O P I N I O N

Robert and Cynthia Moe appeal the
summary judgment granted in favor of the holder of their home mortgage note on
their claims for breach of contract, fraud, fraudulent inducement, and
negligent misrepresentation.  Because the Moes produced less than a scintilla
of evidence in support of their claims, we affirm.

 

 








I.  Factual
and Procedural Background

In 1997, Robert and Cynthia Moe
obtained a thirty-year mortgage from Option One Mortgage Corporation (AOption One@) in the amount of $40,300.00, to be
repaid in monthly installments of $467.96.  The Moes also were required to pay
property taxes and maintain hazard insurance.  In August 2001, Robert Moe moved
to California, and his family followed in January 2002.  The house was left
vacant, and the Moes eventually stopped paying property taxes and hazard
insurance premiums.  

In 2004, the Moes defaulted on the
loan, but pursuant to a forbearance agreement, Option One agreed to allow the
Moes to cure the default.  Under the terms of the Repayment Plan, the Moes were
required to make an immediate payment of $5,742.57 and six monthly payments of
$1,463.57.  The last payment to cure the default under the Repayment Plan was
due on January 20, 2005, and the Moes were to resume their usual scheduled
payments on February 1, 2005.  The Moes failed to make the February 1, 2005
payment, and by February 15, 2005, the Moes= delinquent property taxes totaled
$6,084.12.  

Cynthia Moe testified that she called
Option One on February 15, 2005 about making the payment due that month and was
told that the loan was in default.  Option One also incorrectly informed her
that it had not received the January payment.  According to Cynthia, an Option
One employee told her that the company would straighten out the accounting
problem and call her back in a day or two; however, Cynthia stated that the
employee never called her again.  She telephoned Option One again at the end of
February to discuss the mortgage payments, and again was told that the loan was
in foreclosure.  The Moes made no further payments, and on May 10, 2005, Option
One paid the $731.71 premium for hazard insurance on the property.








Robert Moe testified that he visited
the house in August 2005 to clean and repair it before listing it for sale. 
During that visit, Robert discovered Scott McDonald on the property.  McDonald
had entered the house and removed cleaning supplies and Robert=s tools before breaking the keys off
in the house=s locks to prevent entry.  During this process, McDonald had locked
himself out of the house and broken a window to reenter; after exiting the
building, he nailed boards over the broken window.  Robert testified that when
he confronted McDonald, McDonald returned Robert=s tools and identified himself as an
employee of Texas Home Solutions.  McDonald explained that he was on the
premises to secure the property.  Robert testified that he telephoned Option
One and spoke to a representative who apologized and stated that Option One
would send another company to the house to fix the locks.  According to Robert,
the Option One employee stated that he would tell the next company to contact
Robert to arrange a meeting.  

A few weeks later, Robert received a
phone call from a former neighbor who stated that Atwo guys from some company@ had entered into the Moes= house and were loading a truck with
items from inside the house.  Robert testified that he spoke with one of the
men on the telephone, and the unidentified man asked, AWhere are you?  You are supposed to
be meeting us here.@  Robert explained that he was in California and would not be
in Houston for another week.  He then telephoned Option One, and according to
Robert, A[t]hey told me that they couldn=t believe that the company would show
up like that that [sic] they authorized to come out
there. . . . He told me they weren=t supposed to be there until they had
made an appointment with me.@  Robert further stated that the Option One representative Agave me the impression that he was
going to take care of everything.@  According to Robert, he spoke to
another Option One representative in September 2005 and was told that the house
was in foreclosure, which could be prevented only by payment of the balance on
the loan.

In April 2006, Option One began
foreclosure proceedings.  Although Option One scheduled a foreclosure sale for
June 6, 2006, the Moes obtained a restraining order on June 5, 2006 to prevent
the sale.  The next day, the house was destroyed by fire.








The Moes sued Option One for breach
of contract, fraud, fraudulent inducement, negligent misrepresentation,
conversion, and theft.  Option One moved separately for traditional and
no-evidence summary judgment.  Although it was titled differently, the motion
for traditional summary judgment included many of the same arguments presented
in the motion for no-evidence summary judgment.  The trial court granted both
motions, and this appeal ensued.

II.  Issues
Presented

In four issues, the Moes argue that
the trial court erred in granting Option One=s motion for no-evidence summary
judgment, because the Moes presented more than a scintilla of summary-judgment
evidence to support their claims for breach of contract, fraud, fraudulent
inducement, negligent misrepresentation, conversion, and theft.  We disagree.

III. 
Standard of Review

We review summary judgments de novo, Valence
Operating Co. v. Dorsett,[1] and where the
trial court grants the judgment without specifying the grounds, we affirm the
summary judgment if any of the grounds presented are meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000).  We consider all
grounds the appellant preserves for review that are necessary for final
disposition of the appeal.  See Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 626 (Tex. 1996).  Here, the appellees moved for summary judgment on
both traditional and no‑evidence grounds; thus, we apply the familiar
standard of review appropriate for each type of summary judgment, taking as
true all evidence favorable to the nonmovant, and indulging every reasonable
inference and resolving any doubts in the nonmovant=s favor.  See Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004) (traditional summary
judgment); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)
(no‑evidence summary judgment).








In a traditional motion for summary
judgment, the movant bears the burden to show that there is no genuine issue of
material fact and it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Am. Tobacco
Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  To be entitled to
traditional summary judgment, a defendant must conclusively negate at least one
essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Evidence is conclusive only if
reasonable people could not differ in their conclusions.  City of Keller v.
Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  Once the defendant establishes
its right to summary judgment as a matter of law, the burden shifts to the
plaintiff to present evidence raising a genuine issue of material fact.   City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678B79 (Tex. 1979).

In a motion for no‑evidence
summary judgment, the movant represents that there is no evidence of one or
more essential elements of the claims for which the non‑movant bears the
burden of proof at trial.  Tex. R. Civ.
P. 166a(i); Dias v. Goodman Mfg. Co., L.P., 214 S.W.3d 672, 675B76 (Tex. App.CHouston [14th Dist.]  2007, pet.
denied).  We sustain a no‑evidence summary judgment when (a) there is a
complete absence of evidence of a vital fact, (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (c) the evidence offered to prove a vital fact is no more than a
mere scintilla, or (d) the evidence conclusively establishes the opposite of
the vital fact.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997).  ALess than a scintilla of evidence exists when the evidence is
>so weak as to do no more than create
a mere surmise or suspicion= of a fact.@  King Ranch, Inc., 118 S.W.3d at 751 (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).

IV. 
Analysis

A.        Breach-of-Contract
Claim








The essential elements of a
breach-of-contract claim are (1) the existence of a valid contract;
(2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained as a result of
the breach.  Winchek v. Am. Express Travel Related Servs. Co., Inc., 232
S.W.3d 197, 202 (Tex. App.CHouston [1st Dist.] 2007, no pet.).  In their first issue,
the Moes contend that they presented more than a scintilla of evidence on each
element of their breach-of-contract claim to defeat Option One=s motion for no-evidence summary
judgment.  Specifically, they argue that they performed, tendered performance,
or were excused from performing their contractual obligations.  They also
contend that Option One breached the contract, and that they were damaged by
such breach.

The evidence is uncontroverted,
however, that the Moes (1) failed to make the mortgage payment that was
due on February 1, 2005; (2) failed to make any payment thereafter;
(3) failed to maintain hazard insurance; and (4) failed to pay
property taxes.  Thus, the Moes did not perform or tender performance, but
instead breached the contract.  We therefore overrule the Moes= first issue without reaching their
remaining contentions. 

B.        Claim
for Tortious Misrepresentation

The Moes argue in their second issue
that Option One=s misrepresentations concerning the crediting of the final
payment under the Repayment Plan constitute an actionable tort independent from
Option One=s alleged breach of the Plan=s terms.  We disagree.  See JCW
Elecs., Inc. v. Garza, 257 S.W.3d 701, 705 (Tex. 2008) (AThe precise nature
of the claim is ordinarily identified by examining the damages alleged: when
the damages are purely economic, the claim sounds in contract . . . .@ (citing Sw. Bell Tel. Co. v.
DeLanney, 809 S.W.2d 493, 495 (Tex. 1991)); Jim Walter Homes, Inc. v.
Reed, 711 S.W.2d 617, 618 (Tex. 1986) (AWhen the injury is only the economic
loss to the subject of a contract itself the action sounds in contract alone.@).[2] 
Moreover, the Moes allege that the misrepresentation occurred in mid-February
2005, but by that time, the Moes had defaulted on the Repayment Plan.  Further,
the Moes identify no damages associated with the alleged misrepresentation.  We
therefore overrule the Moes= second issue.

C.        Fraud,
Fraudulent Inducement, and Negligent Misrepresentation Claims 








The Moes next contend that they
presented more than a scintilla of evidence on each element of their claims of
fraud, fraudulent inducement, and negligent misrepresentation.  Specifically,
the Moes assert they presented evidence that (1) Option One made a
representation; (2) the representation was material; (3) the
representation was false; (4) Option One knew the representation was
false, made the representation recklessly, or made the representation
negligently; (5) Option One made the representation with the intent that
the Moes act on it; (6) the Moes justifiably relied on the representation;
(7) the Moes entered a binding agreement in reliance on the
representation; and (8) the representation caused the Moes to suffer
damages.  These arguments are based on multiple alleged misrepresentations.  








First, the Moes argue that Option One
misrepresented that if they successfully completed payments under the Repayment
Plan, they would be able to return to their regularly-scheduled installments;
however, the Moes produced less than a scintilla of evidence that this
statement is false or that it injured the Moes. Cf.  Atl. Lloyds Ins.
Co. v. Butler, 137 S.W.3d 199, 215 (Tex. App.CHouston [1st Dist.] 2004, pet.
denied) (stating that causes of action for fraud and negligent
misrepresentation require proof that a material statement was false); In re
Media Arts Group, Inc., 116 S.W.3d 900, 910 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding [mand. denied]) (stating that the most basic requirement for a
fraudulent-inducement claim is a material false representation).  The Moes next
contend that Option One made misrepresentations about the timeliness of its
receipt of the Moes= last payment under the Repayment Plan.  However, they
produced no evidence of reliance on this statement; to the contrary, the Moes
have always disputed it.  Cf. Ernst & Young, L.L.P. v. Pac. Mut.
Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001) (stating that reliance is an
essential element of fraud); Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171, 179B81 (Tex. 1997) (stating that reliance is essential to a claim
of fraudulent inducement); Butler, 137 S.W.3d at 215 (stating that
reliance is an essential element of negligent misrepresentation).  In addition,
they produced no evidence that they entered into a binding agreement based on
this representation or that they were damaged by the statement.  Cf. Haase
v. Glazner, 62 S.W.3d 795, 797B97 (Tex. 2001) (stating that a claim
for fraudulent inducement presupposes inducement into a binding contract). 
Third, the Moes assert that Option One instructed them to refrain from sending
in their February mortgage payment until Option One called them back.  The
summary-judgment evidence, however, establishes that the Moes were already in
default when the statement was allegedly made in mid-February.  By that time,
the Moes had already missed the February 1, 2005 mortgage payment and failed to
pay property taxes on the premises, and the Moes presented less than a
scintilla of evidence that the injuries they allege were caused by Option One=s verbal instructions to them in
mid-February rather than by their own failure to honor the terms of the written
contract.  Cf. Reardon v. LightPath Techs., Inc., 183 S.W.3d 429, 442
(Tex. App.CHouston [14th Dist.] 2005, pet. denied) (stating that damages are an
essential element of claims for fraud and negligent misrepresentation). 
Finally, the Moes contend that Option One made misrepresentations to a realtor
about  the foreclosure status of the property.  Because the trial court
sustained Option One=s hearsay objection regarding this testimony, and the Moes do
not argue on appeal that this ruling was erroneous, this argument is waived.  See
Tex. R. App. P. 38.1(h).

We overrule the Moes= third issue.

D.        Claims
Relying on Agency

In their fourth issue, the Moes argue
that the trial court erred in dismissing their conversion and theft claims
because there is a genuine issue of material fact regarding whether Texas Home
Solutions acted as Option One=s agent.  Building on that premise, the Moes contend in their
fifth issue that they presented more than a scintilla of evidence that
(1) Option One exercised dominion and control over their personal
property, or appropriated, secured, or took the Moes= personal property; (2) they
owned, possessed, or had the right to immediate possession of that personal
property; (3) Option One=s exercise of dominion and control was wrongful or unlawful;
(4) Option One took the property with the intent to deprive the Moes of
the property; and (5) Option One=s conversion or theft caused the Moes
to suffer damages.  








Because agency is not presumed, the
party alleging agency has the burden of proving it.  IRS Res., Inc. v.
Griego, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam).  Essential to the
agency relationship is the principal=s right to control the means and
details of the process by which the agent is to accomplish the assigned task.  Coleman
v. Klöckner & Co. AG, 180 S.W.3d 577, 588 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
A person may act for and on behalf of another, but if he is not subject to the
principal=s control, an agency relationship does not exist.  Laredo Med. Group
v. Lightner, 153 S.W.3d 70, 72 (Tex. App.CSan Antonio 2004, pet. denied) (en
banc).  Absent proof of the right to control the means and details of the work
performed, only an independent contractor relationship is established.  Coleman,
180 S.W.3d at 588.

Here, the summary-judgment record
contains less than a scintilla of evidence that Texas Home Solutions or its
employees acted as Option One=s agents.  The Moes rely on Robert Moe=s testimony that after he discovered
McDonald at the house, he called Option One and Option One promised to
reimburse the Moes; however, the Moes cite no authority supporting their
argument that such a statement is evidence that Option One retained the right
to control the means and details of work performed on its behalf by Texas Home
Solutions or its employees.  The Moes further assert that Option One=s consolidated log notes Areveal[] that Option One emailed
Texas Home Solutions to rekey the locks and give a set of keys to the Moes.@  Referring to the page of the record
cited by the Moes, only one log entry refers to an email, and it contains no
mention of keys or locks.[3]  Elsewhere in
the record, we find two entries mentioning keys and locks, but neither mentions
email.  These entries are as follows:








8/30/2005 12:55:08 PM CT: JASON
SYKES,[[4]] OOMC-UM
PROPERTY PRESS. - *****RUSH***** PLEASE HAVE CONTACTOR [sic] CALL MR MOE [phone
number] TO GIVE ACCESS TO PROPERTY AND TO REKEY LOCKS.  PLEASE HAVE CONTRACTOR
ADVISE IF THERE ARE KEYS BROKEN OFF INTO THE LOCKS, IF THE LOCKS HAVE BROKEN
KEYS REPLACED [sic].  GIVE A SET OF KEYS TO BORROWER.  PHOTOS JS WORKORDER
15117115 HAS BEEN PROCESSED.

A later entry states:

9/23/2005 4:43:55 PM CT: JASON SYKES,
OOMC-UM PROPERTY PRESS. - ORDERED: 08/30/05 COMPLETED: 09/01/05 U/D: 09/04/05
W/O # 15117115 PER CONTRACTOR KEYS ARE BROKEN OFF IN ALL LOCKS - CONTRACTOR
REPLACED 1 LOCK AS INSTRUCTED.  CONTACTED MR. MOE WHO BECAME VERY IRATE AND
TOLD OUR CONTRACTOR TO GET OFF OF OUR PROPERTY.  NO PHOTOS WERE TAKEN.            

Thus, the log notes indicate that
Option One acted through a contractor.  Moreover, the company whose alleged
employees entered the Moe house in September 2005 is not identified in the
summary-judgment record.

We therefore overrule the Moes= fourth and fifth issues. 

V. 
Conclusion

The evidence is uncontroverted that
the Moes (a) failed to make the mortgage payment that was due on February
1, 2005; (b) failed to make any payment thereafter; (c) failed to maintain
hazard insurance; and (d) failed to pay property taxes.  Moreover, there
is less than a scintilla of evidence that Texas Home Solutions acted as Option
One=s agent rather than as an independent
contractor.  We therefore overrule the Moes= issues presented on appeal and
affirm the judgment of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

Panel consists of Chief Justice
Hedges and Justices Yates and Guzman. 









[1]  164 S.W.3d 656, 661 (Tex. 2005).





[2]  AWe must look to
the substance of the cause of action and not necessarily the manner in which it
was pleaded.@  Jim Walter Homes, Inc., 711 S.W.2d at 617B18.





[3]  That entry, dated November 28, 2005, reports: AEMAIL TO PHILIP GIOELI THAT FC HAS BEEN ON HOLD SINCE
7/30/05 FOR REPYMT PLAN THAT HAS NOT MATERIALIZED AND LOAN IS CODED ADISATER@
[sic] ASKED HIM TO LOOK AT IT AND LET ME KNOW IF HOLD SHOULD BE REMOVED AND
CODE CHANGED.@





[4]    The Moes point to no evidence identifying Jason
Sykes, and do not explain whether this note records information to or from him.