Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00481-CV

Dario **BUSTAMANTE** and Juanita Bustamante,
Appellants

v.

Epigmenio **GONZALEZ**, Jr. and J.A. "Tony" Canales,
Individually and d/b/a Los Abogados Ranch,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-07-282
Honorable Alex William Gabert, Judge Presiding

Opinion by:　　Phylis J. Speedlin, Justice

Sitting:　　　　Catherine Stone, Chief Justice
　　　　　　　　Phylis J. Speedlin, Justice
　　　　　　　　Marialyn Barnard, Justice

Delivered and Filed: June 9, 2010

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

　　　　Dario Bustamante and Juanita Bustamante appeal the trial court's order granting the motions for summary judgment filed by Epigmenio Gonzalez, Jr. and J.A. "Tony" Canales, individually and d/b/a Los Abogados Ranch.  We affirm the judgment of the trial court in part, and reverse and remand the judgment of the trial court in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Applying the well-settled summary judgment standards of review to the evidence presented, the following summarizes the evidence in the light most favorable to the non-movants. Dario Bustamante, a mechanic, had been doing various odd jobs for Gonzalez, most involving carpentry work or plumbing. Three weeks before the accident giving rise to the underlying cause, Gonzalez sent Bustamante to Canales's ranch to work on various pieces of ranch equipment. Bustamante was paid $100 per day by Gonzalez; however, Canales told Bustamante that he would make sure Bustamante was paid for the work done on equipment belonging to Canales if for any reason Gonzalez did not pay him.

Before beginning work on a tractor owned by Canales, Bustamante told Gonzalez that he could not safely attempt to repair the tractor until it was placed out of gear, and that he did not know how to operate the gears. Gonzalez agreed to provide someone who was familiar with operating the tractor to put the tractor out of gear. Gonzalez asked Canales to find someone to put the tractor in a safe gear. Canales asked one of his employees who was familiar with the operation of the tractor, Antonio Galvan, to place the tractor in "neutral."

Antonio Galvan stated in his deposition that his boss, Tony Canales, asked him to show Bustamante how to place the tractor in "park," and that Canales was present when Galvan placed the tractor in "park." Galvan stated that he put the tractor in "park" and told Bustamante that he placed the tractor in "park." Galvan further assured Bustamante that "there's no way that the gear will come up because it's got like a little loop." Because Galvan told Bustamante he had placed the tractor in "park," Bustamante believed he could safely work on the tractor.

Gonzalez knew that Bustamante intended to start the tractor with a remote starter from the ground. During the five or six days after Galvan had placed the tractor in "park," Bustamante attempted to start the tractor from the ground with a remote starter wire; Gonzalez was present during some of these attempts. Subsequently, Bustamante, working alone, did start the tractor from the ground with the remote starter wire. Once started, the tractor suddenly moved forward and struck Bustamante. Bustamante was severely injured, and suffered a mangled left leg, which was subsequently amputated, a broken right leg and pelvis, which resulted in permanent paralysis, dislocation of his right arm, and many other injuries.

Bustamante filed suit against Gonzalez and Canales, asserting claims for negligence, negligent misrepresentation, and premises liability. Bustamante also asserted a claim for gross negligence against Canales only. Specifically, Bustamante alleged that the defendants knew or should have known that Bustamante intended to start the tractor by use of a remote starter switch and knew or should have known it was dangerous to do so if the tractor's transmission was not in the neutral or park position. Bustamante further alleged that Galvan, an agent or employee of both Canales and Gonzalez, failed to make the tractor safe because he neglected to put the tractor's transmission in the "park" or "neutral" position.

Both Canales and Gonzalez moved for summary judgment on traditional and no-evidence grounds, contending that they did not breach any legal duty owed to Bustamante, and that their acts and omissions, if any, were not a proximate cause of Bustamante's injuries. The trial court granted Canales's motion, but denied Gonzalez's. After Bustamante filed his Fifth Amended Petition, Gonzalez and Canales filed supplemental motions for summary judgment on traditional and no-evidence grounds. Bustamante responded and also filed objections. The trial court withdrew its

prior orders, overruled all objections, and granted Canales's and Gonzalez's original and supplemental motions without specifying the basis for its ruling. Bustamante timely appealed.

In five issues, Bustamante argues on appeal that the trial court erred in granting summary judgment in favor of Canales and Gonzalez. In four of his issues, Bustamante challenges the trial court's rejection of various liability theories which formed the basis for Bustamante's claims. In a fifth issue, Bustamante challenges the trial court's rejection of evidence that the actions of Gonzalez and Canales were a proximate cause of Bustamante's injuries.

LIABILITY

In his Fifth Amended Original Petition, Bustamante asserted several theories as the basis for a duty owed to him by Canales and Gonzalez. In his brief, Bustamante challenges the trial court's determination that Canales and Gonzalez were not liable to Bustamante under the following theories: (1) section 414 of the Restatement (Second) of Torts as adopted in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex. 1985); (2) sections 390 and 392 of the Restatement (Second) of Torts; (3) section 343 of the Restatement (Second) of Torts; (4) section 311 of the Restatement (Second) of Torts; (5) agency relationship between Gonzalez and Galvan; and (6) joint enterprise.

**A.      Section 414 of the Restatement (Second) of Torts and *Redinger***

Bustamante argues the trial court erred in granting summary judgment in favor of Gonzalez and Canales because they retained the right to control that portion of the work which directly resulted in injuries to Bustamante. Relying on *Redinger*, Bustamante maintains Gonzalez and Canales actually supervised the portion of the job which, if done correctly, would have put the tractor's transmission out of gear and would have made the tractor safe to start with a remote wire, thus avoiding the accident and injuries sustained by Bustamante.

Generally, an employer has no duty to ensure that an independent contractor performs its work in a safe manner. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006); *Lee Lewis Constr., Inc., v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). An employer can, however, be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the damage. *Fifth Club*, 196 S.W.3d at 791; *Redinger*, 689 S.W.2d at 418. "The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Redinger*, 689 S.W.2d at 418 (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)). In *Redinger*, the supreme court held the general contractor liable for the actions of the independent contractor because the general contractor retained "the power to direct the order in which the work was to be done and to forbid the work being done in a dangerous manner." *Id.*; *see also Elliott-Williams Co., v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999) ("For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work.").

A general contractor can retain the right to control an aspect of an independent contractor's work or project so as to give rise to a duty of care in two ways: by contract or by actual exercise of control. *Lee Lewis Constr.*, 70 S.W.3d at 783. The distinction between these two means of retaining control is important because what a contract says is a question of law for the court, while determining whether someone exercised actual control is generally a question of fact for the jury. *Id*. In this case, no contractual agreement assigning control rights existed between Bustamante and Gonzalez or Canales. *See Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226

(Tex. 1999). Accordingly, we turn to whether the evidence raised a fact issue with regard to the actual exercise of control. *See Lee Lewis Constr.*, 70 S.W.3d at 783.

Gonzalez and Canales argue that they did not retain control over any aspect of Bustamante's work. We believe the evidence raises a genuine issue of material fact with regard to the actual exercise of control. Viewing the evidence in the light most favorable to Bustamante, the evidence showed that both Gonzalez and Canales agreed to pay Bustamante for the work performed on Canales's tractor. The evidence further showed that Bustamante told Gonzalez he did not know how to operate the tractor and that he could not safely work on the tractor until its gears were disengaged. After Gonzalez agreed to find someone to put the tractor in a protective mode, he contacted Canales, requesting that he have the tractor placed out of gear. Canales then instructed Galvan to place the tractor out of gear, and Galvan worked on the tractor while Canales was present and assured Bustamante that the tractor was safely placed in "park." Therefore, because the evidence raised a fact issue with regard to whether Gonzalez and Canales actually exercised control over the means, method, or detail of this portion of Bustamante's work, the trial court erred in granting summary judgment as to this theory of liability.

**B.      Sections 390 and 392 of the Restatement (Second) of Torts**

Section 390 of the Restatement (Second) of Torts, entitled "Chattel For Use By Person Known To Be Incompetent," provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965). Section 392 of the Restatement (Second) of Torts, entitled "Chattel Dangerous For Intended Use," provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

RESTATEMENT (SECOND) OF TORTS § 392 (1965).

With regard to these liability theories, Bustamante alleged that both Canales and Gonzalez, as suppliers of chattel (the tractor), had a duty to supply a tractor that did not present an unreasonable risk of harm to Bustamante because of his inexperience or lack of knowledge about the operation of the tractor and the gearing of the tractor. Further, Bustamante alleged Canales and Gonzalez had a duty to inspect the tractor before supplying it to him to ensure it was safe for the intended work. We agree with the trial court that Canales and Gonzalez are not liable under these sections of the Restatement. First, there is no evidence there was anything wrong with the tractor that made it dangerous to use. Furthermore, there is no evidence that Bustamante was supplied the tractor for "use." Instead, Bustamante was hired to repair the tractor because it would not start and could not be used. Accordingly, the trial court did not err in granting summary judgment on these theories.

**C.**     **Section 343 of the Restatement (Second) of Torts**

Section 343 of the Restatement (Second) of Torts provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition of the land if he: "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." RESTATEMENT (SECOND) OF TORTS § 343 (1965); *see TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 772 n. 19 (Tex. 2009); *Dallas Market Center Dev. Co. v. Liedeker*, 958 S.W.2d 382, 385 (Tex. 1997) (to establish the liability of a premises owner, invitee must prove that "(1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; (4) the owner's failure was a proximate cause of injury to the invitee").

Bustamante maintains that Canales, as owner of the property, owed Bustamante—an independent contractor and business invitee of Canales—a duty to exercise reasonable care to protect him from the dangers posed by dangerous conditions on the land, such as the inoperable tractor. As an invitee, Canales owed Bustamante a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which Canales knew or should have known. *Del Lago Partners, Inc. v. Smith*, No. 06-1022, 2010 WL 1253977, at *3 (Tex. Apr. 2, 2010). On this record, however, there is no evidence that *a condition on the land* posed an unreasonable risk of harm to Bustamante. *See, e.g., Perry*, 278 S.W.3d at 764 (plaintiff alleged that pothole in road constituted condition on the land posing an unreasonable risk of harm); *Gen. Elec.*

*Co. v. Moritz*, 257 S.W.3d 211, 213-14 (Tex. 2008) (plaintiff alleged that absence of handrails on warehouse loading ramp constituted condition on the land posing an unreasonable risk of harm); *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407, 409 (Tex. 2006) (plaintiff alleged that ice from a soft drink dispenser which made grocery store floor slippery constituted condition on the land posing an unreasonable risk of harm); *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536-37 (Tex. 1996) (plaintiff alleged that leaking water made basketball court slippery and thus constituted condition on the land posing an unreasonable risk of harm); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 263-64 (Tex. 1992) (plaintiff alleged that plant spray made store floor slick and constituted condition on the land posing an unreasonable risk of harm); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 297 (Tex. 1983) (plaintiff alleged that grapes falling from self-service bin made grocery store floor slippery, constituting a condition on the land posing an unreasonable risk of harm). The facts of this case seem more appropriate for a claim of negligent activity than premises liability. *See, e.g., City of San Antonio v. Estrada*, 219 S.W.3d 28, 32 (Tex. App.—San Antonio 2006, no pet.) (noting that recovery on a negligent activity theory requires that the injury be a contemporaneous result of the activity itself rather than by a condition created by the activity, and further recognizing that plaintiff injured by sliding down fire station's fire pole asserted a negligent activity claim as opposed to a premises defect claim); *see also Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 628, 631 (Tex. 1976). Even assuming the tractor at issue could be considered a dangerous instrumentality such that it constituted a dangerous condition on the land, the danger created by the condition was open and obvious. The evidence shows that Bustamante realized the dangerous nature of the tractor when he asked that the gears be disengaged before he would work on it. *See Moritz*, 257 S.W.3d at 218 (premises owner owes no duty to warn of open and obvious dangers). Accordingly, we hold the trial

court did not err in granting summary judgment in favor of Canales on Bustamante's premises

liability claim.[1]

**D.      Section 311 of the Restatement (Second) of Torts**

Section 311 provides that negligent misrepresentation involving risk of physical harm occurs

when:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
>> (a) to the other, or
>>
>> (b) to such third persons as the actor should expect to be put in peril by the action taken.
>
> (2) Such negligence may consist of failure to exercise reasonable care
>
>> (a) in ascertaining the accuracy of the information, or
>>
>> (b) in the manner in which it is communicated.

RESTATEMENT (SECOND) OF TORTS § 311 (1965).

Relying on *EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69 (Tex. App.—San Antonio 1990,

writ denied), Bustamante argues the trial court erred in granting Canales' motion as to the negligent

misrepresentation claim because the summary judgment evidence shows that false information

regarding the placement of the tractor's gears was provided to Bustamante by Galvan, an employee

of Canales and of the joint enterprise.  In *Hernandez*, an employee of an independent contractor was

---

[1] In his Fifth Amended Petition, Bustamante alleges that both Canales and Gonzalez are liable to him under a premises liability theory; however, in his briefing on appeal, he directs his premises liability claim only to Canales, the owner of the property at issue.  Accordingly, we hold that Bustamate has waived this issue as it relates to Gonzalez.  TEX. R. APP. P. 38.1(i).  In any event, due to the conclusion that a condition on the land did not pose an unreasonable risk of harm to Bustamante, we hold that Gonzalez is similarly excused from liability under this theory.

injured by an explosion when he made welding repairs to an oil storage tank. *See Hernandez*, 794 S.W.2d at 71. Before the employee began the welding repairs, he inquired whether the storage tank was clean and whether it was safe to weld when there was a standing pool of oil nearby. *Id.* The employee of the premises owner assured the contractor's employee that everything was clean and safe. *Id.* The jury found EDCO liable on a negligent misrepresentation theory. *Id.* at 70-71. The premises owner appealed contending that it owed no duty to the contractor's employee. *Id.* at 71. This court rejected the premises owner's contention, holding: "We are not inclined to shield a possessor from liability for injuries resulting from negligent misrepresentations of fact, particularly where . . . there has been [a] failure to exercise reasonable care to ascertain the accuracy of the information communicated to plaintiff." *Id.* at 76-77.

Similar to the facts in *Hernandez*, Galvan made a false representation to Bustamante that the tractor was in park. Bustamante reasonably relied upon this false representation, and Bustamante was subsequently physically harmed. Moreover, evidence was presented that Galvan was an employee of Canales and assured Bustamante that the tractor had been placed in park while in the course and scope of his employment by Canales. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (noting employer is vicariously liable for the negligence of an employee acting within the scope of his employment even if the employer has not personally committed any wrong). Based on the evidence presented, we hold a fact question was raised on Bustamante's claim of negligent misrepresentation with regard to Canales. We separately address whether the evidence raised a fact issue as to the existence of a principal/agent relationship between Gonzalez and Galvan such that Gonzalez also could be liable for Galvan's negligent misrepresentation.

**E.** **Agency**

Bustamante argues the trial court erred in granting Gonzalez's traditional motion for summary judgment because Gonzalez failed to establish that there was no principal/agent relationship between Gonzalez and Galvan. Alternatively, Bustamante contends he presented evidence establishing a genuine fact issue regarding whether Galvan was the agent of Gonzalez. "It is essential to an agency relationship . . . that the principal have the right to 'assign the agent's task and to control the means and details of the process by which the agent will accomplish the task.'" *Laredo Medical Group v. Lightner*, 153 S.W.3d 70, 72 (Tex. App.—San Antonio 2004, pet. denied) (quoting *Walker v. Fed. Kemper Life Assur. Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio 1992, writ denied)). Thus, even if a person acts for and on behalf of another, if he is not under the other person's control, an agency relationship does not exist. *Lightner*, 153 S.W.3d at 72.

Bustamante specifically avers the following evidence creates a fact issue on the issue of agency: (1) Gonzalez told Bustmante he would find someone to position the tractor gears after Bustamante told him he did not know how to position the gears and planned to start the tractor from the ground; (2) Gonzalez contacted Canales (or an employee of Canales) and requested that Canales (or an employee of Canales) send an operator to the ranch to place the tractor transmission in a safe position; (3) Gonzalez looked at pictures in the tractor's owner's manual so that he could advise Bustamante where to position the tractor's controls; (4) Gonzalez requested that Canales instruct Galvan to put the tractor out of gear; (5) Gonzalez requested that Galvan be sent to the ranch to give Bustamante advice about where to position the gears; and (6) Gonzalez instructed Galvan to go to where the tractor was located on the ranch to perform the work Gonzalez agreed to provide for Bustamante.

We disagree that this evidence creates a fact question as to Gonzalez's control over Galvan. Although there is evidence that Gonzalez looked at diagrams in the tractor's owner's manual, Bustamante does not allege that Gonzalez actually showed any diagrams to him or to Galvan, or instructed him or Galvan to position the tractor gears according to the owner's manual. On the contrary, Gonzalez directed the trial court to evidence that Galvan was the employee of Canales, and that Gonzalez did not control Galvan or Galvan's work. Gonzalez further pointed to Galvan's deposition testimony as evidence demonstrating that he merely contacted Canales and asked him to provide someone to put the tractor in a safe position, which does not amount to dictating the means and details of the process by which Galvan performed the task. Accordingly, we agree that Bustamante failed to establish a genuine fact issue regarding whether Galvan was the agent of Gonzalez. *See Lightner*, 153 S.W.3d at 72 (principal must control the means and details of the process by which the agent will accomplish the task). Based on this analysis, we hold the trial court did not err in granting judgment in favor of Gonzalez on Bustamante's agency theory of liability. Moreover, because Galvan was not an agent of Gonzalez, Gonzalez could not be liable for Galvan's negligent misrepresentation.

**F.      Joint Enterprise**

In his Fifth Amended Petition, Bustamante alleged that at the time of the accident, Canales and Gonzalez were engaged in a joint enterprise as that term is defined by section 491 of the Restatement (Second) of Torts. Therefore, he averred that they were jointly and severally liable to him with regard to all of the claims he asserted. Joint enterprise liability makes each party thereto the agent of the other and thereby holds each responsible for the negligent act of the other. *Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Shoemaker v. Whistler's Estate*, 513

S.W.2d 10, 14 (Tex. 1974). The essential elements of a joint enterprise are: (1) an express or implied agreement among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary[2] interest in that common purpose, among the members of the group; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (citing *Shoemaker*, 513 S.W.2d at 16-17); RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (1965). Canales and Gonzalez moved for summary judgment on the third and fourth elements, contending there was no evidence that they agreed to share profits and losses[3] regarding the tractor or the operation of the ranch, and that there was no equal voice in the operation of the ranch or the use of the tractor.

On appeal, Bustamante maintains that Canales' and Gonzalez's motions for summary judgment regarding his joint enterprise theory of liability are unsupported by evidence. Alternatively, he asserts his response presented more than a scintilla of evidence to establish the existence of a joint enterprise between Canales and Gonzalez. Specifically, Bustamante argues Gonzalez's deposition raises a fact question on this issue because Gonzalez testified he planned to use the tractor in the future at his ranch. Also, the evidence shows that Canales and Gonzalez had

---

[2] The ordinary meaning of "pecuniary" is "of or pertaining to money." Thus, to satisfy the third element of the Restatement definition an interest must first be monetary in nature. The monetary interest must be common among the members of the group. *Wolff*, 94 S.W.3d at 531 (quoting WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1428 (1996)).

[3] Bustamante contends the requirement that profits and losses be shared is an element of joint venture, not joint enterprise, and therefore his response asked the trial court to deny Gonzalez's motion for summary judgment on the basis that he was not required to prove this element. *See Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 58 S.W.3d 263, 273 (Tex. App.—Fort Worth 2001, pet. denied) (noting proof of sharing in profits and losses is an essential element of a joint venture, not a joint enterprise). We, however, broadly construe the motions to attack the element of a community of pecuniary interest.

a joint interest in the enterprise, which was that Canales had his equipment fixed and Gonzalez obtained the free use of the equipment.

We are not persuaded that Bustamante presented evidence raising a fact question on the issue of joint enterprise. First, Bustamante failed to raise a fact issue on the existence of a community of pecuniary interest in a common purpose among Canales and Gonzalez. Joint enterprise requires evidence that monetary benefits are shared among the members of the group without special or distinguishing characteristics. *Wolff*, 94 S.W.3d at 534. Although Canales and Gonzalez may have agreed to share the use of the tractor, there is no evidence that they agreed to share with each other any financial benefits resulting from the operation of the tractor. *Id.* at 533; *see also Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 850 (Tex. App.—Fort Worth 2006, no pet.) (holding that indirect, potential financial interests do not satisfy the third element of joint enterprise). Second, there is no evidence that Canales and Gonzalez had an equal right to a voice in the direction of the alleged enterprise. The summary judgment record reflects that Canales and Gonzalez each owned separate ranches and there was no agreement to combine ranch resources for a common purpose in which they would each have the right to control. Accordingly, we conclude the trial court did not err in granting summary judgment for Canales and Gonzalez on Bustamante's joint enterprise theory of liability.

## CAUSATION

In addition to challenging whether they were liable to Bustamante on the various liability theories he alleged, Canales and Gonzales also moved for summary judgment on the basis that the "cause in fact" of the accident was the use of the remote starter and was therefore "unforeseeable."

Considering the evidence in the light most favorable to Bustamante, and resolving all inferences in his favor, we disagree with Canales and Gonzalez.

"The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 784. Additionally, the test for foreseeability "does not require an actor to anticipate the precise manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate." *Id.* at 785.

There is evidence in the summary judgment record that the accident was caused by Galvan's failure to disengage the tractor's gears. Both of Bustamante's experts opine that a cause of the accident was the failure to fully place the tractor's transmission in a protective mode. James Knorpp, a safety engineer, opined that the overriding cause of the accident was the fact that Bustamante was working on equipment, but he did not understand its operation, and the fact that the controls were not in a protective mode to be safe for the work being performed as Bustamante had been assured. In addition, engineer Smith Reed opined that the tractor's "range selector lever" not being fully in the "park" position and the "speed selector lever" not being in the "neutral" position when the tractor started was a cause of or a substantial factor in causing the accident and causing Bustamante's injuries. Therefore, regardless of how the tractor was started, there exists the possibility that if the tractor's transmission had been fully placed in "park" and "neutral," the accident would not have occurred. *See Lee Lewis Const., Inc.*, 70 S.W.3d at 784 (more than one act may be the proximate cause of the same injury). We therefore hold that the evidence raised a fact issue with regard to causation, and summary judgment could not have been granted on this basis.

**CONCLUSION**

Based on the foregoing, we reverse the summary judgment as to: (1) Bustamante's claim against Canales and Gonzalez based on their retention of control over an aspect of his work, i.e., the placement of the tractor out of gear; and (2) Bustamante's negligent misrepresentation claim against Canales.  We remand those claims for further proceedings.  We affirm the remainder of the trial court's judgment.

Phylis J. Speedlin, Justice