**Affirmed and Memorandum Opinion filed December 16, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00942-CV

### VISION UP, LLC, Appellant

### V.

### TAMRI LONGABAUGH, ON BEHALF OF THE ESTATE OF LONGABAUGH, Appellee

**On Appeal from the 506th Judicial District Court**
**Waller County, Texas**
**Trial Court Cause No. 13-12-22278-A**

## MEMORANDUM OPINION

Vision Up, LLC appeals from the trial court's grant of summary judgment favoring appellee Tamri Longabough, on behalf of the Estate of Marvin Longabaugh. Vision Up sued Marvin, its former lawyer who is now deceased, for legal malpractice. The trial court granted summary judgment based on settlement agreements and releases signed by the two members of Vision Up. On appeal, Vision Up principally contends that the releases signed by the members did not

release Vision Up's claims. We affirm.

## *Background*[1]

According to Vision Up, when Randy Hughes and Broc Spedale decided to open a restaurant in the Navasota area, Hughes hired Marvin Longabaugh to prepare and file a certificate of formation with the Texas Secretary of State for Vision Up, which was to operate the restaurant.[2] The certificate listed Hughes and Spedale as the company's only two members or governing persons. Immediately afterwards, Hughes and Spedale appeared to reach an irreconcilable conflict, and Hughes informed Longabaugh that Spedale no longer wished to be a part of the business. Longabaugh then filed an amended certificate of formation, removing Spedale as a governing person. Subsequently, Spedale sued Hughes, alleging in the alternative either that he had been wrongfully removed as a governing person of Vision Up or he remained a member despite the filing of the amended certificate.

Further according to Vision Up, allegedly based on Longabaugh's advice, Hughes refused to admit either that Spedale had been wrongfully removed or that he remained a member. Spedale then amended his petition to include Vision Up as a defendant. Longabaugh filed answers on behalf of both Hughes and Vision Up. When Spedale objected to Longabaugh's dual representation, other counsel took over Vision Up's defense. Spedale then amended his petition again to add Longabaugh himself as a defendant and to assert a claim against Longabaugh purportedly on behalf of Vision Up.

---

[1] The background information is taken largely from Vision Up's appellate brief and pleadings in the court below. Vision Up acknowledges that its existence has been forfeited by operation of the Texas Tax Code but states it is bringing this existing claim under chapter 11 of the Business Organizations Code.

[2] For ease of reference, we will refer to both Marvin Longabaugh and Tamri Longabough, on behalf of the Estate of Marvin Longabaugh, interchangeably as "Longabaugh" in this opinion.

At Longabaugh's request, the trial court severed the claims against him from the claims Spedale alleged against Hughes and Vision Up. After Longabaugh's death in 2017, his wife Tamri filed a suggestion of death and appeared on behalf of the estate.

Although it is not entirely clear on this record what happened in the original case after the severance, it appears that at some point, the trial court entered a declaration that Spedale was still a member of Vision Up. According to Vision Up, Spedale's claims against Hughes then proceeded to a jury trial, and after the jury found Spedale had not been damaged, the trial court rendered a take-nothing judgment favoring Hughes. During the pendency of an appeal, the parties reached a settlement, pursuant to which Hughes signed a settlement agreement and release, relinquishing claims against Longabaugh for both himself and Vision Up. Spedale also signed a settlement agreement and release, relinquishing claims against Longabaugh for both himself and Vision Up.

After the settlement but before Spedale dismissed his claims against Longabaugh as a result of the settlement, Vision Up intervened in the severed lawsuit against Longabaugh, asserting malpractice. Longabaugh filed a traditional motion for summary judgment in which he relied on and attached the settlement agreements and releases signed by Hughes and Spedale on behalf of both themselves and Vision Up. Vision Up filed a response to which it attached two declarations by Hughes in which he averred that the trial judge in the underlying lawsuit had ordered him to pay $30,000 of Spedale's attorney's fees. Hughes further stated that to settle Spedale's claims against him, Hughes also agreed to settle any malpractice claims he may have against Longabaugh and Longabaugh's malpractice insurance carrier agreed to make a payment directly to Spedale on Hughes' behalf. Hughes says that no one ever discussed with him that the

3

settlement would include Vision Up's potential malpractice claims against Longabaugh and he had no intention of releasing those claims for Vision Up. He also asserts that Vision Up received no consideration either for the release he signed or the release Spedale signed and Vision Up did not authorize Hughes, Spedale, or anyone else to release any claims. As will be discussed below, Hughes's statements in the declarations directly conflict with statements in the settlement agreements and releases that he and Spedale signed. The trial court rendered a final, appealable summary judgment disposing of all claims against Longabaugh.

## *Discussion*

Vision Up raises two issues, arguing that (1) Spedale did not have standing to sue Longabaugh on Vision Up's behalf, and (2) the trial court erred in granting summary judgment based on the releases. We will begin by addressing Vision Up's second issue before turning briefly to its first issue.

## I. Summary Judgment

In its second issue, Vision Up contends that the trial court erred in granting summary judgment favoring Longabaugh because the releases attached to Longabaugh's motion were not effective to release claims owned by Vision Up. We will first set out the law governing our review. We will then discuss the contents of the settlement agreements and releases before turning to an analysis of Vision Up's specific arguments.

## A. Governing Law

**Summary judgments.** In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine,

4

material fact issue sufficient to defeat summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**Contract construction.** A release is a contract and therefore subject to the same rules of construction as any other contract. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Both the question of ambiguity and the interpretation of an unambiguous contract are questions of law we review de novo. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). When a contract's meaning is disputed, our primary goal is to ascertain and give effect to the parties' intent as expressed in the four corners of the written agreement. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020); *URI, Inc.*, 543 S.W.3d at 763. "Objective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *URI, Inc.*, 543 S.W.3d at 763–64 (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)). We presume parties intended the "plain, ordinary, and generally accepted meaning" of their words unless the agreement indicates otherwise. *Id.* at 764. And we consider the entire writing in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). No single provision will control our

interpretation, but all provisions must be considered in reference to the whole. *Id*.

The circumstances surrounding the creation of a contract may also be considered as an aid to ascertaining the intended meaning. *URI, Inc.*, 543 S.W.3d at 764. However, the parol evidence rule prohibits a party to a written contract from presenting extrinsic evidence to create an ambiguity or to give the contract a meaning different from that which its language imports. *Id*. Only when a contract is ambiguous may a court consider the parties' interpretations and admit extraneous evidence to establish the true meaning of the contract. *Id*. at 764–65.

### B. The Releases

**The Hughes release.** At the beginning of the settlement agreement and release signed by Hughes, it identifies the parties to the agreement and describes the "Hughes Parties" as "Randy Hughes, Individually and as a member of Vision Up LLC." The release then identifies the litigation that is being settled and states that Spedale filed suit "Individually and on behalf of Vision Up, LLC." It further states that the Hughes Parties "made a presuit demand against Longabaugh" based on the amount of attorney's fees awarded to Spedale in the underlying lawsuit. The parties then state a desire "to settle and resolve . . . all issues and disputes between them." As for consideration for the settlement, the release lists "the warranties, representations, agreements, and releases given hereunder, and for other good and valuable consideration, the sufficiency of which is hereby stipulated." More specifically, the release states that Longabaugh or his insurance carrier agreed to pay a certain sum, which is redacted from the copy in the record, that the Hughes Parties acknowledged receiving in settlement.

As for the claims released by the Hughes Parties, the release states that those parties "agree not to file a lawsuit against Longabaugh . . . for claims related to the Underlying Suit." It further says that "none of the releasing Parties shall assert

6

against [Longabaugh] any future claims based on any conduct, act, or omission encompassed by the releases." The released claims further included "any and all claims based upon any of [Longabaugh's] acts or omissions prior to the date of this Agreement and arising from any conduct of any kind or character whatsoever, *from the beginning of time to the present*." (Emphasis in original).

The release also contains a section labeled "Authority and Approvals" in which it states that each of the signatories to the release was "duly authorized to . . . resolve all disputes . . . between the parties" and "to bind . . . those entities on whose behalf he or she purports to act in the capacity identified" and that each signatory "warrants that all corporate or other approvals necessary . . . to enter into this Agreement have been obtained." Hughes's notarized signature appears twice at the end of the document, once for himself and once "as a member of Vision Up, LLC."

**The Spedale release.** The settlement agreement and release Spedale signed states that Spedale is entering the agreement "Individually and in the right of Vision Up, LLC." It further states that for a sum provided by Longabaugh or his insurance carrier, receipt of which Spedale acknowledged, Spedale, individually and in the right of Vision Up, "releases, acquits, and forever discharges . . . Longabaugh . . . from any and all actions, causes of action, claims and demands . . . in any way growing out of any and all claims for negligence, breach of fiduciary duty, [etc.] that were or which could have been asserted in" the lawsuit against Longabaugh. The parties further agreed that "this Agreement resolves all issues arising from facts made the basis of the Lawsuit."

The release also contains an indemnity paragraph under which Spedale indemnified Longabaugh from any claims that have been or could be "asserted by any person . . . or business entity claiming by, through or under . . . Spedale and

7

Vision Up, LLC in any manner arising from the occurrence or the lawsuit." Spedale additionally warranted that he was the sole owner of the claims that were asserted or could be asserted and that such claims had not been assigned or transferred to another party. He further warranted that he had "no knowledge of any other claims arising out of the facts" of the lawsuit. At the end of the document, Spedale signed it both for himself and "as a member of Vision Up, LLC."

### C. Vision Up's Arguments

In asserting that the releases were not effective to release its claims, Vision Up specifically argues: (1) it was not a named party in either release, (2) neither of the releases mentioned its claims as being released, (3) no consideration was paid to it for either release, (4) neither Hughes nor Spedale had authority to release the claims, and (5) neither a legal malpractice case nor its proceeds may be assigned. Vision Up supports many of its arguments by referencing Hughes's declarations.

In analyzing the effect of the releases and Vision Up's arguments, there are several important circumstances to remember. *See URI, Inc.*, 543 S.W.3d at 764 (explaining that the circumstances surrounding the creation of a contract may be considered in ascertaining the intended meaning). At the time the releases were signed, Spedale, Hughes, Vision Up, and Longabaugh had all been parties to litigation, which included numerous claims revolving around the formation and management of Vision Up and in which Vision Up was named as both a plaintiff and a defendant. In his sixth amended petition, Spedale asserted that he was acting both "individually and in the right of Vision Up," and he also asserted that he "is a governing member of Vision Up, LLC [and] fairly and adequately represents the interests of Vision Up, LLC in enforcing the rights of Vision Up, LLC in this case." An answer was also filed on behalf of Vision Up in the underlying case.

8

Additionally, Vision Up's certificate of formation reflects that it only had two members or governing persons; one of whom (Spedale) was suing the other (Hughes), and both of whom were either suing Longabaugh (Spedale) or had made a presuit demand against Longabaugh (Hughes). Spedale had even expressly brought claims against Longabaugh on Vision Up's behalf.

Under the circumstances, it therefore makes sense that Vision Up and any claims made by it or against it would be a part of any settlement. At the time Hughes signed the first release, the claims against Longabaugh had been severed and the other claims had been tried and were on appeal. Afterwards, the appeal was dismissed due to settlement and Spedale filed a nonsuit of the claims he brought individually and on behalf of Vision Up against Longabaugh.

Read together, in their entirety, and under the circumstances existing at the time, the settlement agreements and releases signed by the two members of Vision Up were clearly aimed at resolving any current or potential claims that either of them or Vision Up had against Longabaugh based on the creation or management of Vision Up. We now turn to a discussion of Vision Up's specific arguments.

**A named party.** Generally, a release is only effective against a party that is named in the release or described with such particularity that its identity is not in doubt. *See Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997) (per curiam); *cf. Undavia v. Avant Med. Grp., P.A.*, 468 S.W.3d 629, 633 & n.3 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (discussing situations in which more parties than just the named party were released because that was the clear intent). Vision Up insists that it was not a named or described party in the releases signed by Hughes and Spedale. The plain language of the releases clearly contradicts this position.

9

As discussed above, in the Hughes release, it identifies the "Hughes Parties"—a plural descriptor—to include "Randy Hughes, Individually and as a member of Vision Up LLC." "Hughes Parties" is then used throughout the document. It further states that "none of the releasing Parties shall assert against [Longabaugh] any future claims . . . ." "[R]eleasing Parties," again a plural term, clearly refers to Hughes individually and as a representative of Vision Up. And the release contains an "Authority and Approvals" section in which it indicates that Hughes was "duly authorized to . . . bind . . . those entities on whose behalf he . . . purports to act in the capacity identified" and he "warrant[ed] that all corporate or other approvals necessary . . . to enter into this Agreement ha[d] been obtained." Hughes's notarized signature then appears at the end of the document both for himself and "as a member of Vision Up, LLC."

In the Spedale release, it states that Spedale is entering the agreement "Individually and in the right of Vision Up, LLC." It further mentions Vision Up multiple other times and contains signatures both for Spedale himself and for Spedale "as a member of Vision Up, LLC." The only two members/governing persons of Vision Up both signed releases purporting to represent Vision Up. Vision Up was clearly and unambiguously named or described as a releasing party in the releases. *See Nguyen v. Nguyen*, No. 14-19-00913-CV, 2021 WL 786628, at *5 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) (holding LLC was party to release signed on its behalf by two of its three members).

**Claims included.** To effectively release a claim in Texas, the releasing instrument must "mention" the claim to be released, and any claims not clearly within the subject matter of the release are not discharged. *Wilson v. Fleming*, 566 S.W.3d 410, 425 (Tex. App.—Houston [14th Dist.] 2018), *rev'd on other grounds*, 610 S.W.3d 18 (Tex. 2020) (citing *Victoria Bank & Trust Co. v. Brady*, 811

10

S.W.2d 931, 938 (Tex. 1991)). Vision Up asserts that the releases here did not mention its claims against Longabaugh. Again, the plain language of the releases clearly contradicts this assertion.

In the Hughes release, it notes that the Hughes Parties, which as discussed above included Hughes in his capacity as a member of Vision Up, made a presuit demand against Longabaugh. The release further states that the parties desired "to settle and resolve . . . all issues and disputes between them" and that the Hughes Parties agreed "not to file a lawsuit against Longabaugh . . . for claims related to the Underlying Suit" or for "any and all claims based upon any of [Longabaugh's] acts or omissions prior to the date of this Agreement and arising from any conduct of any kind or character whatsoever, *from the beginning of time to the present*."

In Spedale's release, which he signed "as a member of Vision Up, LLC," it states that Spedale, individually and in the right of Vision Up, "release[d], acquit[ed], and forever discharge[d] . . . Longabaugh . . . from any and all actions, causes of action, claims and demands . . . in any way growing out of any and all claims for negligence, breach of fiduciary duty, [etc.] that were or which could have been asserted in" the lawsuit against Longabaugh. The parties further agreed that "this Agreement resolves all issues arising from facts made the basis of the Lawsuit," and Spedale indemnified Longabaugh from any claims that have been or could be "asserted by any person . . . or business entity claiming by, through or under . . . Spedale and Vision Up, LLC in any manner arising from the occurrence or the lawsuit." The releases clearly and unambiguously mentioned claims belonging to Vision Up as being released. To conclude otherwise would be to render significant portions of the releases meaningless. *See J.M. Davidson*, 128 S.W.3d at 229 (explaining that contracts should be construed so that no provisions are rendered meaningless).

11

**Consideration.** Like any other contract, settlement agreements and releases must be supported by valid consideration. *See Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 571 (Tex. App.—San Antonio 2004, no pet.). Consideration consists of a benefit to the promisor or a detriment to the promisee. *Petroleum Workers Union of the Rep. of Mex. v. Gomez*, 503 S.W.3d 9, 31 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998)). A written instrument reciting consideration is presumed to be sufficient. *Id*. Lack of consideration is an affirmative defense to enforcement, and the burden of proof is on the party alleging a lack of consideration. *Id*. What constitutes consideration is a question of law for the court. *Id*.

In its brief, Vision Up complains that "no money was paid to Vision Up in consideration for a release. Therefore, Vision Up's claims were not released." In his first declaration, Hughes also states that "[n]o money was paid or any other form of consideration given to Vision Up, LLC, by . . . Longabaugh or his insurance carrier." Vision Up, however, does not offer any authority for the proposition that consideration must be paid or given to the releasing party. As stated, consideration can consist of either a benefit to the promisor *or a detriment to the promisee*. *Id*. Consideration may be given either by the promisee or by some other person to either the promisor or some other person. *Garza v. Evans*, No. 01-11-00666-CV, 2012 WL 1893731, at *8 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op.); *Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 824 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Hovas v. O'Brien*, 654 S.W.2d 801, 802–03 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

The releases here clearly recite that either Longabaugh, or his carrier on his behalf, paid a sum certain in exchange for each release. The fact that the payment

12

may not have been to Vision Up does not mean it was not a detriment to Longabaugh. *See Garza*, 2012 WL 1893731, at *8; *Frazer*, 4 S.W.3d at 824; *Hovas*, 654 S.W.2d at 802–03. Moreover, the Hughes release states that the Hughes Parties (which included Hughes as a representative of Vision Up) acknowledged receiving the funds in question. The releases clearly contained sufficient consideration.

**Authority.** Vision Up next argues that the evidence did not conclusively establish that either Hughes or Spedale had authority to release Vision Up's claims. In support, it cites *First Trust Corp. TTEE FBO v. Edwards*, in which the court held that a release signed by a company's shareholder and officer did not release the company's claims. 172 S.W.3d 230, 239 (Tex. App.—Dallas 2005, pet. denied). *Edwards*, however, is readily distinguishable from the present circumstances.

In *Edwards*, the company was not a party to the release and the release did not indicate that the company was releasing any claims against anyone and also did not contain "any language describ[ing] anyone granting a release for, or on behalf of" the company. *Id*. Here, in contrast and as described above, Vision Up was a party to the release and the release clearly and unambiguously expressed an intent to release Vision Up's claims. Additionally, Spedale and Hughes—Vision Up's only two members/governing persons—both claimed to be acting on behalf of Vision Up and in their capacities as members of Vision Up. Indeed, each signed their release twice—once individually and once in their capacity as a member of Vision Up. As discussed above, in his release, Hughes even represented that he was "duly authorized to . . . bind" Vision Up.

The present case is more analogous to *Nguyen* than *Edwards*. In *Nguyen*, two of three members of an LLC brought derivative claims on behalf of the LLC

13

and then signed a settlement agreement and release that purported to relinquish the LLC's claims as well as the claims of the individual members. *Nguyen*, 2021 WL 786628, at *5. We affirmed a summary judgment favoring the released party based on the releases, explaining that an LLC acts only through its human agents; as governing persons of the LLC, the individuals were authorized agents; there was no indication in the agreement that the individuals intended to sign only on their own behalf; and nothing demonstrated either that the individuals lacked actual authority or that the released party knew that they lacked authority. *Id.* (citing Tex. Bus. Orgs. Code § 101.254(b), et al.).

Here, Spedale and Hughes were the two governing members of Vision Up, LLC, and both signed the agreements individually and on behalf of Vision Up. While Vision Up cites Hughes's unsworn declaration in which he stated under penalty of perjury that Vision Up did not authorize Hughes, Spedale, or anyone else to release any claims, this extrinsic evidence is insufficient to raise a fact issue on authorization where the releases themselves clearly and unambiguously represent that Hughes and Spedale were releasing claims on behalf of Vision Up and in their capacities as Vision Up members. *See URI, Inc.*, 543 S.W.3d at 763–65 (explaining that the parol evidence rule prohibits the use of extrinsic evidence to create an ambiguity or give a contract a different meaning than its language imports and objective manifestations of intent control over what a party alleges they intended to say). Moreover, Vision Up does not suggest that Longabaugh was aware of any alleged lack of authority. *See Nguyen*, 2021 WL 786628, at *5. Spedale and Hughes's authority to release Vision Up's claims is conclusively established in the record.

**Assignment of claims.** Lastly, Vision Up contends that neither a legal malpractice case nor its proceeds may be assigned, citing *Inliner Americas, Inc. v.*

14

*MaComb Funding Group, L.L.C.*, 348 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), and *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd). While this statement of the law is accurate, it has no application to the facts of this case. There is no evidence in the record that Vision Up assigned its malpractice claim or any proceeds to Spedale or Hughes; Spedale and Hughes simply acted as the members and governing persons of Vision Up in releasing those claims. Finding no merit in any of Vision Up's arguments, we overrule its second issue.

## II. Spedale's Standing

In its first issue, Vision Up contends that Spedale did not have standing to sue Longabaugh on Vision Up's behalf. More specifically, Vision Up contends that the trial court erred in denying a plea to the jurisdiction filed in Vision Up's name in the underlying litigation. Standing is a component of subject-matter jurisdiction and a constitutional prerequisite to maintaining suit under Texas law. *Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993).[3] Vision Up, however, does not offer any explanation regarding how Spedale's standing or lack of standing in the underlying litigation is relevant to this appeal from the trial court's grant of summary judgment based on settlement agreements and releases which relinquished Vision Up's claims against Longabaugh. We will not attempt to make such argument for Vision Up. *See Rogers v. City of Houston*, 627 S.W.3d

---

[3] In arguing that Spedale lacked standing, Vision Up points out that Business Organizations Code section 101.113 provides that "[a] member of a limited liability company may be named as a party in an action by or against the limited liability company only if the action is brought to enforce the member's right against or liability to the company." Tex. Bus. Orgs. Code § 101.113. Vision Up also asserts that a member of an LLC lacks standing to assert claims individually when a cause of action belongs to the company, citing *Wyrick v. Business Bank of Texas, N.A.*, 577 S.W.3d 336, 353 (Tex. App.—Houston [14th Dist.] 2019, no pet.), among other cases. On these bases, Vision Up contends that the trial court erred in not dismissing all claims brought by Spedale purportedly on behalf of Vision Up.

777, 787 (Tex. App.—Houston [14th Dist.] June 8, 2021, no pet. h.) (citing Tex. R. App. P. 38.1(i)). We overrule Vision Up's first issue.

Having overruled both of Vision Up's issues, we affirm the trial court's judgment.

/s/    Frances Bourliot
        Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.